# WILLIAM D. KERFOOT

## v.

## CROMWELL MOUND COMPANY.

*Filed at Ottawa May 19, 1884.*

1. CONTRACT—*written contract not signed by the party sought to be charged—liability.* It is not always essential to the liability of a person sought to be charged upon a written contract, that his name be signed thereto.

2. In this case certain property owners in the city of Chicago, desiring to procure the improvement of certain streets upon which their property was situated, entered into a contract for that purpose. The contract was reduced to writing, the person who was to make the improvement being designated as party of the first part, and the property owners as party of the second part, among the latter the name of W. D. Kerfoot, who disputed his liability on the ground that he had not signed the instrument, being given. C. A. Kerfoot was also named as one of the parties of the second part. The instrument provided that the party of the first part should do the work, and the parties of the second part should pay for it, and concluded as follows: "In witness whereof the parties hereto have caused the contract to be signed by the parties representing first and second part," etc. The paper was signed, after the signature of the contractor, in the following form:

C. A. KERFOOT,           }
   By W. D. Kerfoot,     }   Committee and agents for
A. M. JONES.             }   owners of property.

This was considered a sufficient execution of the contract by W. D. Kerfoot to bind him according to its terms, and to render the instrument admissible in evidence against him in an action upon the written contract to enforce his liability.

3. The name of W. D. Kerfoot appears in the written contract as one of the parties of the second part. The agreement purports to bind him as well as the other parties of the second part, and the testing clause recites that the contract was caused to be signed by the persons representing the parties of the first and second parts. Further, W. D. Kerfoot, the person sought to be charged, did sign his name to the paper for C. A. Kerfoot, one of the two persons appointed to represent the parties of the second part. Having signed the agreement, W. D. Kerfoot must be presumed to have known that he was named as a party to it, and that it was intended to bind him according to its terms. Having so signed and delivered the instrument, he must be presumed to have intended to bind himself by it. He thereby adopted it as his own.

4. APPEAL—*reviewing controverted questions of fact—constitutionality of section 89 of the Practice act in its limitation upon the power of the Supreme Court in that regard.* Section 89 of the Practice act, in limiting the jurisdiction of the Supreme Court to review controverted questions of fact, is not subject to the objection that it assumes to restrict the "appellate jurisdiction" of that court, as given in the constitution. It is entirely competent for the legislature, subject to certain enumerated exceptions, to make all judgments and decrees affirmed by the Appellate Court, final and conclusive; and so may make any portion of such judgments, as, in its finding of the facts, conclusive upon the Supreme Court.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

The contract declared upon in this case was as follows:

"Agreement made and entered into this 23d day of August, A. D. 1875, by and between the Cromwell Mound Company, party of the first part, and David Kreigh, D. N. Burnham, O. J. Hines, John Tyrell, A. M. Jones, Barrett, Todd & Cochrane, and W. D. and C. A. Kerfoot, party of the second part, witnesseth: That the said party of the first part, in consideration of the payment to be made by the party of the second part, as hereinafter set forth, hereby covenant and agree to and with the said second party, to provide and deliver a sufficient quantity of Cromwell gravel taken from the Cromwell gravel pit, near Lombard, Illinois, in Du Page county, to form a road bed on the following described amount as described," (giving a description of the streets upon which the improvement was to be made, and of the character of work to be done.) And the said party of the second part, in consideration of the premises, hereby agree to pay to the said party of the first part two dollars and twenty-five cents per cubic yard, to be measured by the engineer that may be agreed upon by both parties, and to be measured on the cars at the places most convenient to unload for said streets, and the said party of the second part agrees to pay for the gravel as fast as the front of any block shall be graveled.

"In witness whereof, the parties hereto have caused the contract to be signed by the parties representing first and second part, on the day and year first above written.

O. HUSE,<br>
President Cromwell Mound Co.

C. A. KERFOOT,
  By W. D. Kerfoot,  }  Committee and agents for
A. M. JONES,              owners of property."

Messrs. COLLINS & ADAIR, with whom was Mr. J. P. WILSON, for the appellant.

Messrs. ELLIS & MEEK, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action of assumpsit, brought by appellee, in the Superior Court of Cook county, against appellant, on a contract, to recover damages for its breach. The declaration contained special and common counts. The case was tried by the court without a jury, by consent of the parties, and the issues were found for plaintiff, the damages assessed, and judgment rendered in its favor. The case was taken to the Appellate Court for the First District, where the judgment was affirmed, and defendant brings the record to this court, and assigns errors.

It is first urged that the Superior Court erred in admitting the agreement because it was not executed by appellant, and it therefore was variant from the agreement declared on in the declaration. Whether the written agreement is binding on appellant is the first question to be determined. Appellant's name appears in the written contract as one of the parties of the second part. The agreement purports to bind him as well as the other parties of the second part, and the testing clause recites that the contract was caused to be signed by the parties representing the parties of the first and second parts. Not only so, but appellant signed his name to

it for C. A. Kerfoot, one of the two persons appointed to represent, and who did represent, the parties of the second part. Having signed the agreement, no difference whether for himself or for C. A. Kerfoot, he must be presumed to have known that he was named as a party to it, and that it was intended to bind him according to its terms. Having signed and delivered the agreement, he must be presumed to have intended to bind himself according to its terms. He thereby adopted, and bound himself by, the agreement. It being binding on him, it was properly read in evidence. If it varied from the contract set out in the declaration so as to be precluded from being read under the special counts, being a valid contract, which bound appellant, appellee having fully performed its part of the contract, it, according to all the authorities, was admissible under the common counts.

It appears from the evidence, and it is not controverted, that appellant, and a number of other owners of property in the city, determined to have the streets in front of such property graveled, and they authorized Jones and C. A. Kerfoot to contract with appellee to have the gravel furnished and the work done. They agreed upon the terms of the contract, and it was reduced to writing, and executed and delivered, as above stated, among themselves, each owner agreeing to pay for the improvement that should be thus made in front of his property. The company having performed its part of the agreement, and appellant having failed to pay his portion of the money, this action was brought for its recovery, and we think the written agreement was clearly admissible, under the common if not the special counts, in connection with the other evidence in the case, to establish a liability on the part of appellant. The contract, when admitted, showed a request by appellant for appellee to furnish the gravel and to perform the work, and it fixed the price to be paid when performed. There was therefore no error in admitting the written agreement in evidence.

The other questions presented in the Superior Court are questions of fact, and are setttled by the findings of the Appellate Court. But it is insisted that the 89th section of the Practice act is unconstitutional. It provides: "The Supreme Court shall reëxamine cases brought to it by appeal or writ of error, as to questions of law only, and no assignment of error shall be allowed which shall call in question the determination of the inferior or Appellate Courts upon controverted questions of fact in any case, excepting those enumerated in the preceding section." The section referred to, as amended in 1879, (Sess. Acts 1879, p. 223,) is this: "Appeals from and writs of error to the circuit courts, the Superior Court of Cook county, the Criminal Court of Cook county, county courts and city courts, in all criminal cases below the grade of felony, shall be taken directly to the Appellate Court, and in all criminal cases above the grade of misdemeanors, and cases in which a franchise or freehold or the validity of a statute or the construction of the constitution is involved, and in all cases relating to revenue, or in which the State is interested, as a party or otherwise, shall be taken directly to the Supreme Court." Thus it is seen that we are prohibited from reviewing the facts in all other cases, except, as is held, cases in chancery. *Moore* v. *Tierney*, 100 Ill. 207.

It is contended that the first section of article 6 is violated by that provision. The portion to which reference is made provides that the Supreme Court shall have original jurisdiction in cases relating to revenue, etc., and "appellate jurisdiction in all other cases." The 11th section of that article provides that the General Assembly may organize Appellate Courts, "to which such appeals and writs of error as the General Assembly may provide may be prosecuted from circuit and other courts, and from which appeals and writs of error shall lie to the Supreme Court in all criminal cases, and cases in which a franchise, or freehold, or the validity of

a statute is involved, and in such other cases as may be pre-
scribed by law." From this provision it is seen that, with
the exceptions named, the General Assembly has the power
to make all judgments and decrees affirmed by the Appellate
Court, final and conclusive, and the section confers unre-
stricted authority on the General Assembly to require all
appeals and writs of error to be tried in that court but the
enumerated exceptions. Having the power to make all judg-
ments of that court final but the excepted cases, it may pro-
vide that any portion of its judgments shall be final, on the
principle that the whole contains all of its parts. If it has
power to make the entire judgment final, as we have seen it
has, it may any portion of the judgment,—hence the power
to make the judgment of that court, on the facts, final· and
conclusive on this court.

When our Supreme Court was first organized, the common
law of England had been adopted and was in force in this
State. Under that law the appellate courts never considered
the weight of the evidence except in appeals in chancery.
The findings of the jury were final, and not subject to review
by the appellate court. It is true the circuit judge could set
aside the verdict and grant a new trial, but the appellate
court received and acted upon the findings of the facts as
conclusive, and considered only questions of law arising on
the record. This being the common law, and it being in
force in this State, it became and was the law of the Supreme
Court of the State. It so remained until the 21st of July,
1837, when the General Assembly required the court to pass
upon the evidence when the finding of the facts was excepted
to in the circuit court. The enactment provides: "Excep-
tions taken to opinions or decisions of the circuit courts
overruling motions in arrest of judgment, motions for new
trials, and for continuances of cases, shall hereafter be
allowed; and the party excepting may assign for error any
opinion so excepted to, any usage to the contrary notwith-

standing." (Laws Special Sess. 1837, p. 109.) That was the first introduction of the practice of reviewing the evidence heard by the jury in the court below, by this court. Down to that time this court looked to the evidence in the case merely to see in what manner questions of law were presented, and only considered such questions. The same constitutional provision as to the jurisdiction of our Supreme Court was, in substance, inserted in the constitution of 1818, and in both subsequent constitutions, and it was under that provision that the practice of this court in considering questions of law alone obtained until 1837, and that practice still obtains in the Supreme Court of the United States, and other States in the Union. We are aware of no case that holds that parties have a constitutional or vested right in the practice governing courts, except as the right of trial by jury is secured. It has never been held that the legislature has no power to alter the practice of the courts of the State. Under the present practice the evidence may be reviewed in all cases by the Appellate Court, which was not allowed at the common law. The General Assembly may, no doubt, under the constitution, restore the common law practice, and permit the review of the evidence by either the Appellate or this court. When the constitution of 1818 was adopted there was no practice in the appellate courts, except in chancery, to review the evidence, and that was because the court, on appeal, had before it the same evidence, in the same form, in writing, that was heard by the vice-chancellor. No such practice as the appellate court, in cases at law, reviewing the evidence, was known at that time, hence the term "appellate jurisdiction," meant only the power to review and decide questions of law. We therefore do not have the slightest doubt of the constitutionality of the section challenged.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*