MATILDA NUSSBAUM, Ex'x of the Estate of Alden Nussbaum, Deceased, Plaintiff-Appellee, *v.* OSCAR WILLIAMS *et al.*, Defendants.—(CENTRAL ILLINOIS KENWORTH SALES AND SERVICE, INC., Defendant-Appellant.)

Fourth District   No. 16114

Opinion filed July 17, 1980.

Law Offices of Walwyn M. Trezise, of Fairbury, for appellant.

Merrick Hayes & Associates, Ltd., of Bloomington, for appellee.

Mr. JUSTICE GREEN delivered the opinion of the court:

Defendant, Central Illinois Kenworth Sales and Service, Inc., appeals a summary judgment of the circuit court of McLean County entered on February 8, 1980, declaring plaintiff, Matilda Nussbaum, as executrix of the estate of Alden Nussbaum, deceased, not bound under a buy-and-sell agreement to convey to defendant-corporation her decedent's stockholdings in defendant. We reverse and remand.

In count I of the amended complaint, filed on November 30, 1979, plaintiff alleged that defendant, Oscar Williams, purporting to act as president of defendant-corporation, had demanded that she, as executrix, convey the decedent's shares to that corporation pursuant to the buy-and-sell agreement and that she had refused to do so. She sought the declaratory relief which was subsequently granted pursuant to her December 17, 1979, motion for summary judgment as to count I. Counts II and III pend in the trial court. We have jurisdiction because of the trial court's finding pursuant to Supreme Court Rule 304(a) (73 Ill. 2d R. 304(a)).

Plaintiff's motion for summary judgment was neither supported nor opposed by affidavits, counteraffidavits or other documents. However, the following undisputed facts were established by the pleadings. At Alden Nussbaum's death and for the prior years pertinent here, he was president of defendant and owner of 50% of its stock. During that time, Byron Nussbaum and Oscar Williams were vice-president and secretary-treasurer of defendant respectively and each owned 25% of its stock. A document purporting to be a buy-and-sell agreement had been typed

with the date of the 20th day of November, 1976, typed thereon and the figures "1976" crossed out and the figures "1978" typed in below the crossed out figures. The document described Alden Nussbaum, Byron Nussbaum, and Williams as "Shareholders" and provided in substance that upon the death of any of them the personal representative of the deceased shareholder would sell and the defendant-corporation would buy the shares of the deceased shareholder at a price established by a formula. The document contained numerous other provisions, including restrictions upon alienation of the shares. The document had been signed in the following manner:

"IN WITNESS WHEREOF, this Stockholders Agreement was executed the day and year first above set forth.

/s/ Oscar Williams

/s/ Byron Nussbaum

CENTRAL ILLINOIS KENWORTH
SALES & SERVICE, INC.

BY /s/ Alden Nussbaum
PRESIDENT

ATTEST:

/s/ Richard Hagstrom   "

Plaintiff asserted and continues to assert that, as a matter of law, Alden Nussbaum's estate cannot be bound by the document because he signed only in his representative capacity as president of defendant and not as an individual shareholder. She points out that a line remained vacant after the signature of the other shareholders and that the line would have been the logical place for her decedent to have signed had he intended to bind himself individually. The trial court agreed with plaintiff and granted summary judgment accordingly.

The parties do not dispute that ordinarily a corporate officer does not bind himself individually by signing a contract on behalf of his corporate principal. (19 Am. Jur. 2d *Corporations* §§1341-43.) However, the defendant-corporation maintains that where, as here, the body of the contract sets forth that the corporation and the corporate officer who happens to sign on behalf of the corporation are both to be bound by the contract, the single signature purporting to be on behalf of the corporation

is sufficient to bind both the corporation and the individual. The theory is based upon analogy to *Kerfoot v. Cromwell Mound Co.* (1884), 115 Ill. 502, 25 N.E. 960.

In *Kerfoot*, a firm selling gravel filed a complaint sounding in both special and common counts against one W. D. Kerfoot to recover for its furnishing gravel used in making a road bed. The trial court, over Kerfoot's objection admitted into evidence a document purporting to be an agreement for furnishing of the gravel and for payment in exchange. It listed W. D. Kerfoot and C. A. Kerfoot as being among property owners agreeing to pay for the gravel. The document was signed on behalf of the plaintiff by an agent and then on behalf of the purchasers of the gravel in this manner, "C. A. Kerfoot by W. D. Kerfoot, A. M. Jones, Committee and agents for owners of property." On appeal from an award of damages, the supreme court held the admission of the document into evidence to have been proper, saying:

> "Appellant's name [W. D. Kerfoot] appears in the written contract as one of the parties of the second part. The agreement purports to bind him as well as the other parties of the second part, and *the testing clause recites that the contract was caused to be signed by the parties representing the parties of the first and second parts.* Not only so, but appellant signed his name to it for C. A. Kerfoot, one of the two persons appointed to represent, and who did represent, the parties of the second part. *Having signed the agreement, no difference whether for himself or for C. A. Kerfoot, he must be presumed to have known that he was named as a party to it, and that it was intended to bind him according to its terms.* Having signed and delivered the agreement, he must be presumed to have intended to bind himself according to its terms. He thereby adopted, and bound himself by, the agreement. It being binding on him, it was properly read in evidence." (Emphasis added.) (115 Ill. 502, 504-05, 25 N.E. 960, 961.)

The court further stated, "we think the written agreement was clearly admissible, under the common if not the special counts, in connection with the other evidence" to establish liability on the part of C. A. Kerfoot. 115 Ill. 502, 505, 25 N.E. 960, 961.

Thus, the supreme court gave three reasons why the admission of the document was not error. One was that the property owners, of whom W. D. Kerfoot was one, authorized a committee to purchase the gravel, and the document was properly signed by agents of the committee. The second reason, the one defendant relies on here, was that as W. D. Kerfoot knew he was named in the document as a purchaser he was presumed to have intended to bind himself personally when he signed on behalf of C. A. Kerfoot. The court also noted that in a suit under common counts, the

document would show that the plaintiff did not furnish the gravel as a volunteer. We do not interpret any of the reasons given by the court to be of less significance than the others and, therefore, do not consider any of them to be merely dictum.

In *Lumley v. Kinsella Glass Co.* (1899), 85 Ill. App. 412, a promissory note was signed "U. S. Desk Manufacturing Co., Wm. Lumley, Sec'y." The note stated that "we promise" to make the required payments. After a personal judgment was entered against Lumley, he appealed, arguing that error resulted from the giving of an instruction stating that the proof of Lumley's signing the document in the manner shown made a prima facie case of his personal liability. The appellate court affirmed.

■■ We do not interpret either *Kerfoot* or *Lumley* to hold that the person signing the document in a representative capacity was, as a matter of law, bound individually by the document because the document stated that the individual was to be a party. Rather we consider the cases to merely indicate that the situation has probative value in showing an intention of the person signing to be individually bound. *Kerfoot* speaks in terms of a presumption. We deem a better analysis to be that an inference is created.

■■ The case before us differs from *Kerfoot, Lumley,* and every other case called to our attention in that here, an attempt is made to hold the Nussbaum estate individually liable as a party of the first part (*i.e.*, seller) even though Alden Nussbaum agreed only as a representative of the party of the second part (*i.e.*, buyer). We agree with plaintiff that this difference is significant, but we do not agree that it entirely negates any inference that in signing in a representative capacity, Alden Nussbaum intended to also bind himself personally. Rather we consider the difference between the duty he undertook on behalf of the corporation and the duty to which the corporation seeks to hold him merely lessens the weight to be given to the inference.

■■■ In analyzing this case it is important to keep in mind that we are not trying to interpret the meaning of the document in issue. It appears to be clear and unambiguous. The issue is whether Alden Nussbaum, as an individual, intended to consent to the agreement. In speaking of application of the parol evidence rule when such a question is involved, a highly regarded scholar has stated, "However worded, and however regarded, it [the rule] excludes no evidence and has no legal operation until the fact of *assent* to the document as a complete and accurate 'integration,' has been established." (Emphasis added.) (Corbin On Contracts §31, at 124 (1963).) Thus parol evidence may be examined to determine whether Alden Nussbaum assented to the requirement that his stock be sold. In view of *Kerfoot* and *Lumley*, the record before the court at the time summary judgment was entered was insufficient to determine

as a matter of law that he had not done so. His intent was a disputed question of fact. For this reason the summary judgment must be set aside.

We are aware that prior to plaintiff's filing her motion for summary judgment, defendant-corporation had filed a similar motion on December 13, 1979. We are also aware of language in various cases, emanating from *Allen v. Meyer* (1958), 14 Ill. 2d 284, 152 N.E.2d 576, indicating that where, as here, cross-motions for summary judgments are before the court, summary judgment for one side or the other is proper. However, we are aware of no case where a reviewing court found a question of fact as to a necessary issue to still exist and, nevertheless, allowed a summary judgment to stand. If that rule were to be applied to a case like this where the only dispute is as to an issue where a material question of fact exists and both sides have moved for summary judgment, a trial court could rule in favor of either side and neither could claim error. We are in complete agreement with *Perlman v. Time, Inc.* (1978), 64 Ill. App. 3d 190, 380 N.E.2d 1040, that we are not precluded from determining that a disputed material question of fact exists in cases of this nature.

We are aware of the difficulties of proof of Alden Nussbaum's intentions that may occur at trial because of the application of section 2 of "An Act in regard to evidence and depositions" (Ill. Rev. Stat. 1979, ch. 51, par. 2) upon testimony of the parties or persons interested in the case as to transactions in which he was involved. However, the parties will have to proceed with such evidence as is available.

The summary judgment entered in favor of plaintiff is reversed and the case remanded to the circuit court of McLean County for further proceedings.

Reversed and remanded.

TRAPP and WEBBER, JJ., concur.