STELLA SOBISCHEK-ROBINSON, Respondent, *v.* SUPREME COUNCIL OF THE ROYAL ARCANUM, Appellant.

Second Department, May 9, 1919.

**Insurance — action upon benefit certificate — defense — evidence of suicide.**

In an action to recover upon a benefit certificate providing that in case the member should within a certain period take his own life, whether sane or insane, his certificate should become null and void, evidence *held* to establish that said member committed suicide.

PUTNAM and BLACKMAR, JJ., dissented, with opinion.

APPEAL by the defendant, Supreme Council of the Royal Arcanum, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Suffolk on the 4th day of December, 1918, upon the verdict of a jury, and also from an order entered in said clerk's office on the 20th day of November, 1918, denying defendant's motion for a new trial made upon the minutes.

*Howard C. Wiggins* [*Uriah W. Tompkins* with him on the brief], for the appellant.

*Harry A. Davidow,* for the respondent.

JAYCOX, J.:

This action was brought to recover upon a benefit certificate for $1,000, issued by the defendant to John Sobischek, Jr., in which the plaintiff was designated as the beneficiary. The complaint alleged the admission of said John Sobischek, Jr., to membership in the defendant society, issuance to him of the benefit certificate designating the plaintiff as beneficiary, performance upon the part of the said member of all the conditions required by him to be performed and the death of said member on the 2d day of November, 1916. All of these allegations were admitted by the answer, which set forth an affirmative defense to the effect that the contract of membership contained a stipulation that in case the member should within five years from and including the date of his initiation take his own life, whether sane or insane, his benefit certificate should become null and void; that five years have not elapsed since said John Sobischek, Jr., became a member of said order and that said member did take his own life by chloroform poisoning or the inhalation of chloroform vapor on the date above mentioned.

The facts are undisputed. At the opening of the case the defendant was given the affirmative of the issue and introduced practically all of the testimony. One witness was examined upon the part of the plaintiff, but his testimony is in accord with that given by the defendant.

At the time of his death, Sobischek lived at Bohemia, a small hamlet north of the village of Sayville, in the county of Suffolk. He was employed by a florist named Shevalley, at Blue Point, a village about six miles distant from Bohemia. At the time of his death he had worked for Shevalley only three days. Immediately before that he had worked for another florist about two months, and before that a few days for a man named Born. Prior to his employment by Born he had worked for Shevalley, the man for whom he was working at the time of his death. · His work with Shevalley required him to arise very early in the morning — about three-thirty A. M.— upon days when flowers were shipped. The night previous to his death he occupied the same bed with his wife. On the morning of Sobischek's death, his wife says she was aroused by hearing dogs barking; her dog

in·the house was barking as were some of the neighbors dogs; that her husband got up, dressed himself, took a lighted lamp, left the room and went downstairs. At that time it was half-past three. This was the last she saw of her husband alive. She heard no noise of any kind after he went downstairs. Mrs. Sobischek arose a little after six o'clock. She missed the lamp which her husband had taken with him and endeavored to telephone to his place of employment, but she obtained no answer. She then returned to the house and looked for her husband. She saw the cellar door open, and upon going down the stairs she saw some stove enamel spilled on the steps. Proceeding down the stairs she found her husband lying on the cellar floor with his head in a barrel which was lying upon its side. Some bags were stuffed into the barrel around the body. Nothing was disturbed in the cellar and there were no signs of a struggle. The body showed no evidences of violence of any kind. Upon removing the body from the barrel it was found that there was a handkerchief across the face which was knotted in the back. Over this was a towel which was also knotted in the back. Upon the handkerchief was the odor of chloroform. Upon a beam near the body was a bottle labeled " chloroform," in which there remained a few drops of chloroform.

The decedent was of a cheerful, jovial disposition until a few days before his death. Then he became quiet and morose and told one of his fellow-workmen that it was " the miserablest day " of his life. He also said that he had stopped smoking and his friend advised him to resume smoking.

The label upon the bottle found in the cellar bore the name of Sewell Thornhill, a druggist at Sayville. Sobischek purchased chloroform from Thornhill some five months prior to his death. At the time of the purchase of this chloroform Sobischek told the druggist that he desired it for the purpose of killing a dog. His wife, the plaintiff in this action, testified that she saw the empty chloroform bottle and that her husband threw the empty bottle into the woods, and that she saw no chloroform around the house after that. An autopsy was performed and the doctor who performed the autopsy testified that death was the result of chloroform poisoning.

The death, therefore, must have been the result either of

accident, homicide or suicide. It needs no discussion to convince any one that the death was not the result of accident. I think the homicide theory is equally untenable. The decedent was not tied in any way. His legs were straight down from his body and his arms were at his side. There was nothing whatever to indicate a struggle. The decedent was a strong, robust man, in the prime of life. It is impossible to believe that he could have been overcome by a man or any number of men and placed in this barrel where his body was found without there being some indication of a struggle. In addition to this, the decedent had purchased chloroform — the very kind of poison that caused his death, and shortly before his death he had been so gloomy and morose as to attract the attention of the men with whom he worked. This was a complete change in his demeanor. The circumstances are such as to compel a belief that the decedent committed suicide.

The judgment and order should be reversed and a new trial granted, costs to abide the event.

JENKS, P. J., and RICH, J., concurred; PUTNAM, J., read for affirmance, with whom BLACKMAR, J., concurred.

PUTNAM, J. (dissenting):

As defendant had the burden to prove that deceased's death was by suicide, I think the court properly directed a verdict for plaintiff, where both sides united in asking for the direction of the court. The evidence was circumstantial and left the cause of death to conjecture. Suicide is not presumed. (*Mallory* v. *Travelers' Ins. Co.*, 47 N. Y. 52, 54; *Travellers' Ins. Co.* v. *McConkey*, 127 U. S. 661, 667; *Connecticut Life Insurance Co.* v. *Akens*, 150 id. 468.) Even where the alternative to suicide may be murder, as where the deceased was found dying in his back yard with a bullet wound near the heart, the presumption is still against suicide. (*Connecticut Mut. Life Ins. Co.* v. *M'Whirter*, 73 Fed. Rep. 444, 449.) The circumstances here are much stronger against defendant than in many cases where the court sustained a verdict against the insurer's claim of death by suicide. (*Pythias Knights' Supreme Lodge* v. *Beck*, 181 U. S. 49; *Kornig* v.

*Western Life Indemnity Co.,* 102 Minn. 31, 35; *Krogh* v. *Modern Brotherhood,* 153 Wis. 397.) The condition of the dead body was peculiar. The legs protruded from a barrel. The head and face were bound with a handkerchief and towel. The handkerchief was tied behind. On top was a towel, also knotted at the back below the ears. About the body had been stuffed old clothes and bags, evidently to exclude the passage of air. The precautions against resuscitation were extraordinary. The autopsy showed chloroform poisoning. A high authority says that death from inhalation of chloroform " may occur with a celerity unparalleled by any other poisonous agent whatever." (2 Whart. & Stillé Med. Jur. [5th ed.] § 537.) I think there was no such clear evidence that such injuries were self-inflicted as to justify setting aside a verdict thus directed against the defendant.

BLACKMAR, J., concurred.

Judgment and order reversed and new trial granted, costs to abide the event.