ANNA H. SEES, as Administratrix, etc., of NEVIN B. SEES, Deceased, Respondent, v. THE MASSACHUSETTS BONDING AND INSURANCE COMPANY, Appellant.

First Department, February 15, 1935.

*Herman Lenitz* of counsel [*Isidore Epstein* with him on the brief; *Herman Lenitz,* attorney], for the appellant.

*John Dwight Sullivan,* for the respondent.

O'MALLEY, J. The plaintiff, administratrix of her deceased husband, Nevin B. Sees, has recovered on a policy of accident insurance. The main defense relied upon was suicide. A partial defense predicated upon change of occupation was also interposed.

Reversal is sought upon the grounds that the verdict upon the issues tendered by the jury was against the weight of evidence, and because of alleged prejudicial errors committed in the exclusion of competent and material evidence relating to the main issue of suicide.

Whether death was due to accident or deliberate and intentional suicide presented a close question of fact. Concededly death was caused by the inhalation of carbon monoxide gas from the exhaust pipe of an automobile. Plaintiff claimed that the insured became exposed to the poisonous fumes while engaged in changing a tire on the rear right wheel; the defendant, that the change of tire was a mere pretense adopted by the insured as a means of exposing himself to the poisonous gas. A brief recital of the facts bearing upon this issue is necessary.

The insured lived with his wife and infant child at Amityville, Long Island. About six o'clock on Friday morning, February 6, 1931, he left home in the automobile in question to go to Hempstead, Long Island, promising to return for breakfast. The plaintiff heard nothing further from him until his body was found in the garage on the premises at Amityville on the following Sunday morning, February eighth, between nine and ten o'clock. He had been dead at least thirty-six hours.

At that time the doors and windows of the garage, which was a small wooden structure twenty by twelve by eight feet, were closed. The car had been backed into the garage and the insured's body was found at right angles to the rear of the car on the concrete floor. He was dressed in working clothes, overcoat, gloves and cap. His body was on its stomach, with his head resting on his cap about eighteen inches from the end of the exhaust pipe. There was a slight abrasion on the forehead. The tire from the right rear wheel, partly inflated, had been removed and rested against the wall of the garage on the right of the car. Defendant's evidence showed that when fully inflated it disclosed no leak. The spare tire had been removed and rested against the rear wall. The right wheel rested on its drum on the floor. A jack, which is described as having " fallen over," was on the floor at the rear of the car. A tool box, on which one of the feet of the insured rested, was tilted, and spare parts of the motor, valve springs, connecting rod and other motor parts were scattered on the floor.

The gasoline tank was about three-quarters full and the evidence

tended to show that the motor had stopped running because of " loading " and that under the condition in which the automobile was found it might have run for two or three hours before such " loading." There is no evidence as to whether the ignition was on or off.

The deceased and his wife had occupied the house at Amityville from April 1, 1930. A cousin of the deceased, Paul Satteson, lived with them. The evidence shows that the deceased was suspicious of the relations between Satteson and the plaintiff. In early October an occasion arose when he openly charged the plaintiff with having been intimate with Satteson. On the same day Satteson left the insured's home and did not return. While not important it is only fair to say that these charges of infidelity were denied by plaintiff.

Prior to this occurrence the married life of the plaintiff and the insured had been happy and agreeable. Then followed a decided change in the attitude of the insured towards his wife. He complained to his parents, who lived in Pennsylvania and whom he had frequently visited in company with his wife, that matters were not going right at home and he blamed Satteson. While it had always been customary for the plaintiff to accompany the insured on his visits to his parents, he went on two occasions alone after the incident in October.

The plaintiff had been the beneficiary of the policy sued upon prior to the occurrence in October. Thereafter the insured made it payable to his estate. This is relied upon by the defendant as indicative of the change of attitude of the insured towards the plaintiff. There was evidence tending to show that on the occasion in October when he charged his wife with infidelity he stated that he would have killed Satteson if he could have gotten his hands on him, and when admonished by a neighbor that that would have been a futile act, he said that he would have followed it by killing himself.

In support of the defense of suicide the defendant offered in evidence a letter written by the insured to his parents in December. It contained a note payable to their order in the sum of $12,000. It was dated March 13, 1925, payable in six years, or on March 13, 1931. Among other things, the letter stated: " I have made a note out to you both and I want you to put it away in safe keeping, and I have made a will to cover it in the event anything happens to me that you will be paid that amount."

The letter also advised his parents not to say anything about the note when " you write."

It is significant that the note, which bore date March 13, 1925, was mailed from Amityville. However, the plaintiff and the insured had lived there only from April 1, 1930. The defendant urges that the jury would have been justified in finding that the note was not made in 1925, but was executed at the time the letter was written. It is urged that the note was dated back in order that it would carry accrued interest, which, added to the face of the note, would bring the total amount to over $16,000. It is urged that the deceased adopted this means of diverting this amount of the proceeds of the policy from his estate to his parents. The evidence tends to show that the deceased was without other property and that he could not have hoped to meet the note except from the policy which called for payment of $30,000 in case of death by accident.

The defendant also attempted to introduce evidence with respect to what the insured said or did about making a will which was referred to in the letter.

We are of the opinion that the letter and note were improperly excluded, as they were both relevant and material as bearing upon the state of mind of the insured at the time they were executed.

We are also of the opinion that the court improperly limited the cross-examination from which it was sought to bring out whether it was customary for the deceased to leave the doors of the garage open when he took the car away; whether it was customary for him to back the car into the garage; whether the plaintiff had observed the condition of the doors of the garage during Friday and Saturday after the insured disappeared, and whether she had made inquiry with respect to his whereabouts and the reason for his absence from Friday morning until his death was discovered.

The defendant also attempted to offer evidence that the deceased had met with two accidents, while he was visiting his parents in Pennsylvania, shortly before his death. If accidents did occur, and they were of a character which would indicate an intent on the part of the deceased to take his own life, they were properly admissible.

The defense also offered evidence tending to show that the insured was an expert automobile mechanic, and as such would have been cognizant of danger attendant upon changing a tire in a small garage where both the windows and doors were closed and the motor kept running.

In a case of this character, where the intention of the insured is in and of itself a distinct and material fact to be ascertained by a chain of circumstances, there should be a liberal opportunity

afforded for introducing any evidence which would throw light upon the issue.

Facts such as declarations, acts and disposition tending to show an intent or motive for suicide are relevant and admissible. (*Smith* v. *N. B. Society*, 123 N. Y. 85; *Sobischek-Robinson* v. *Supreme Council Royal Arcanum*, 188 App. Div. 12; *Goldschmidt* v. *Mutual Life Ins. Co.*, 134 id. 475; *Pagett* v. *Connecticut Mutual Life Ins. Co.*, 55 id. 628; *Herschkowitz* v. *Mutual Life Ins. Co.*, 93 Misc. 522; 1 Wigm. Ev. [2d ed.] §§ 143, 144.)

We are of opinion, therefore, that the evidence so excluded and other evidence of like character not discussed should have been admitted and that reversible error was committed by its exclusion.

It follows, therefore, that the judgment appealed from should be reversed and a new trial ordered, with costs to the appellant to abide the event.

MARTIN, P. J., MERRELL, McAVOY and UNTERMYER, JJ., concur.

Judgment reversed and a new trial ordered, with costs to the appellant to abide the event.