Sylvia Smith, Appellee, v. Metropolitan Life Insurance Company, Appellant.

Gen. No. 42,298.

Opinion filed March 2, 1943.

HOYNE, O'CONNOR, RUBINKAM & MELANIPHY, of Chicago, for appellant; NATHANIEL RUBINKAM and JOHN C. MELANIPHY, both of Chicago, of counsel.

IMMENHAUSEN, BANOVITZ, BALIN & GOEBEL, of Chicago, for appellee; MEYER C. BALIN, of Chicago, of counsel.

MR. JUSTICE FRIEND delivered the opinion of the court.

Plaintiff, as beneficiary, brought suit on two industrial life insurance policies issued by defendant upon the life of Hosie Smith, which, in addition to a death benefit of $250 under each policy, provided that double indemnity would be paid if death were caused solely by external, violent and accidental means, and also that no double indemnity would be paid if the death

of insured resulted from self-destruction, whether sane or insane. Trial by jury resulted in a verdict and judgment for plaintiff of $500, from which defendant has taken an appeal.

Insured was 35 years old, married and residing with his wife and her daughter by a former marriage on West 64th street, Chicago. From May 1938, until two weeks prior to his death on March 28, 1939, he had been unemployed. For a considerable period before his death he was afflicted with chronic migraine headaches, for which he had received medical treatment. March 16, 1939, he purchased a truck and engaged in selling eggs from house to house and to stores. There is evidence that on the morning of his death he had breakfast, was cheerful, left home about 9 o'clock to attend to his business, and was apparently well when he left home. Shortly after 12 noon his wife heard the garage service door, which was open, banging back and forth. Upon entering the garage through that door she found insured sitting in the front seat of the truck, back of the steering wheel, asphyxiated from monoxide gas. He was fully dressed in trousers, shirt and two sweaters, with a leather jacket lying on the seat beside him. The motor was still running and he had a distributor part in one of his pockets. The double doors, opening into the alley, through which he had driven into the garage, were closed and barred from the inside. A police officer who arrived shortly thereafter testified that insured's hands were clean, there was no grease on his person, no tools lying about, and no indication that the truck had been under repair. Dr. Joseph R. Guttman testified that he had attended insured from November 1938, to January 1939, and found severe headaches, constipation and abdominal pains. He diagnosed chronic appendicitis and severe migraine, secondarily due to an inflamed appendix or bowel around the appendix and prescribed ultra-violet ray treatments and a sedative.

In order to recover under the double-indemnity provisions of the policies it was incumbent upon plaintiff to allege that the insured's death occurred through external, violent and accidental means. Defendant admitted that he died by carbon monoxide asphyxiation, denied that death resulted through accidental means and averred that his death resulted from suicide, while sane or insane. The only triable issue thus presented was whether Smith died by accidental means or as the result of self-destruction.

In submitting the cause to the jury the court, over defendant's objection, gave plaintiff's instruction No. 1, which is: "The court instructs the jury that the defense relied upon by the defendant is suicide. You are instructed that the defendant, Metropolitan Life Insurance Company, must establish its defense by preponderance or greater weight of the evidence." It is urged as the principal ground for reversal that this instruction constituted reversible error. We recently had occasion in *Anders v. Metropolitan Life Ins. Co.*, 314 Ill. App. 196 (Abst.), to pass upon similar facts arising under the identical provisions of a policy issued by the same company. It was there urged by defendant that in order to justify the judgment it was essential to plaintiff's right of recovery to prove that Anders' death was brought about by accidental means. We held that under the state of the pleadings and provisions of the contract the burden was on plaintiff to prove by a preponderance of evidence that insured came to his death as a result, directly and independently of all other causes, of bodily injuries sustained through external, violent and accidental means, and cited the early case of *Fidelity & Casualty Co. v. Weise*, 182 Ill. 496, as supporting our conclusion. That decision has never been overruled. Nevertheless plaintiff's counsel argue that defendant, having interposed the defense of suicide, had the burden of proving it, and that the court properly so instructed the

jury, and they ask us to re-examine the authorities in the light of this contention.

In the *Weise* case suit was brought upon an accident policy and the defense interposed was that the insured had committed suicide. The court instructed the jury that defendant had the burden of proving that affirmative defense. In reversing judgment for plaintiff, the Supreme Court held that it was essential to plaintiff's recovery to prove by a preponderance of the evidence that the assured came to his death through external, violent and accidental means, and that the instruction incorrectly cast the *onus probandi* upon the defendant; that "The case, upon the facts, demanded the jury should have been accurately advised as to the *quantum* of evidence required to be produced by the plaintiff," and the error was therefore reversible in character.

Decisions in this and other States have followed this doctrine. In *Wilkinson v. Aetna Life Ins. Co.,* 240 Ill. 205, the only factual question presented was whether the injuries which caused the insured's death were accidental or self-inflicted, and the court held that "The burden of proof was upon plaintiff to show they were accidental and not self-inflicted," citing *Fidelity & Casualty Co. v. Weise.* In the recent case of *New York Life Ins. Co. v. Gamer,* 303 U. S. 161, the company agreed to pay double indemnity upon receipt of due proof that death of the insured resulted, directly and independently of all other causes, from bodily injury effected solely through external, violent and accidental means, and it was held that "The burden was on plaintiff to allege and by a preponderance of the evidence to prove that fact. The complaint alleged accident and negatived self-destruction. The answer denied accident and alleged suicide. Plaintiff's negation of self-destruction taken with defendant's allegation of suicide served to narrow the possible field of controversy. Only the issue of accidental death *vel*

*non* remained. The question of fact to be tried was precisely the same as if plaintiff merely alleged accidental death and defendant interposed denial without more.'' Citing *Travelers' Ins. Co. v. Wilkes,* 76 F. (2d) 701; *Fidelity & Casualty Co. of N. Y. v. Driver,* 79 F. (2d) 713. In *Dimmer v. Mutual Life Ins. Co. of N. Y.,* 287 Mich. 168, plaintiff brought suit for double indemnity under a policy containing similar provisions, and the sole issue tried was whether death was caused by suicide or by accident. In discussing decisions which appeared to present a conflict the court pointed out the distinction between cases where suit is brought to recover a death indemnity under an ordinary life insurance policy without additional benefits in case of death by accident, and policies such as the one here under consideration, and held that in the former class of cases suicide was an affirmative defense and the burden of proving it was cast upon defendant. ''However, when the action is brought upon an accident policy or upon the double indemnity provision of a life policy, it is incumbent upon plaintiff to show that death occurred through accidental means. The burden of proving accidental death and the consequent negativing of suicide is on plaintiff.'' Citing *New York Life Ins. Co. v. Gamer, supra,* and a long list of decisions in other jurisdictions.

Most of the cases cited by plaintiff to support her contention that the burden of proving suicide always rests on defendant do not involve actions upon double-indemnity provisions. In several of them there was no dispute as to which party had the burden of proof. The underlying reason for the rule casting upon plaintiff the burden of proving accidental death is in harmony with the fundamental proposition that plaintiff must prove the material allegations of his complaint by a preponderance of evidence. Where suit is brought upon a policy providing for double indemnity in case of death sustained through external, violent and acci-

dental means, it is incumbent upon the plaintiff to allege that the insured died through accidental means; otherwise his complaint would not state a cause of action; and having made that allegation, it is incumbent upon him to sustain it by a preponderance of the evidence. The fact that suicide is interposed as a defense in this class of cases does not change the rule with respect to the quantum of evidence. The defense of suicide is but another means of negativing the allegations that the death was accidental, and it narrows the issue before the jury to whether the insured died through accident or suicide. In the first instance plaintiff is required to make a prima facie case showing that the death was accidental. Defendant then has an opportunity to adduce countervailing proof and show, if it can, that death resulted from suicide. This presents an issue of fact for the determination of the jury, but it does not alter the *onus probandi* or relieve plaintiff from proving by a preponderance of the evidence the facts which he has alleged in his complaint and upon which he must rely for recovery.

Defendant by its instruction No. 1 asked the court to charge the jury as follows: ''The court instructs the jury as a matter of law that the plaintiff has the burden of proving by a preponderance of the evidence that the insured met his death solely through external, violent and accidental means, directly and independently of all other causes.'' That instruction correctly states the rule of law and should have been given.

As further ground for reversal it is urged that the court erred in excluding the testimony of Dr. Meyer Brown as set forth in defendant's offer of proof. Dr. Brown was a specialist in nervous and mental diseases, associated with Northwestern University Medical School, and acting as consultant in neuropsychology for the United States War Department. He had also been connected with the Behavior Clinic of Cook county for some six years prior to October

1941. The court permitted him to state that on July 26 and 27, 1938, he examined the insured at the county jail on the request of Judge O'CONNELL of the criminal court, but refused to permit him to testify that in connection with the examination he made observations as to Smith's conduct, appearance and mood, and elicited from him a history wherein he told Dr. Brown that he had long suffered from severe headaches occurring frequently, which were depressing and caused him to become pessimistic, irritable, unable to concentrate on his work, critical of himself and self-accusatory; that he had been accustomed to engage in periodic "drinking bouts" for some 15 years, as a form of relief from headache and mental depression, which had become particularly severe in the preceding two years; that the extent and effect of these headaches had upon two occasions caused him to contemplate suicide, once about a year prior to the examination, when he had gone up to a bridge with the intention of jumping off but had not done so because too many people were watching, and again about three months before the examination, when he had purchased a gun with the avowed intention of committing suicide with it. The offer of proof included a statement by Dr. Brown that the attacks of depression were typical in every respect of those seen in the depressed phase of manic-depressive psychosis, and his opinion that a patient so afflicted has a tendency to commit suicide. The court sustained plaintiff's objection to the offer, and the question presented is whether the court erred in this behalf and whether upon a retrial of the cause testimony of that character should be admitted.

Much space is devoted in the record to a discussion between the court and counsel as to the field of evidence embraced within the offer, and plaintiff's counsel argue that since the offer embraced evidence, only part of which was admissible, the whole offer was

properly rejected. For guidance upon the second trial, it may be stated that under the settled rule ''If *several facts* are included in the offer, some admissible and others inadmissible, then the whole (if properly objected to) is inadmissible; in other words, it is for the proponent to sever the good and the bad parts.'' Wigmore on Evidence, vol. 1, sec. 17, p. 320 (3d Ed.).

The objection offered to the substance of Dr. Brown's proffered testimony is that it was incompetent matter, especially in view of its remoteness with respect to the date of Smith's death. However, it is conceded by plaintiff that insured suffered from migraine headaches up to his death and for a long time prior thereto. His own attending physician so testified. The purpose of the proffered evidence was to show by Smith's own statements, as related to Dr. Brown, that these frequently occurring headaches brought on depressive moods, irritability and restlessness, which he sought to alleviate by excessive drinking, and which affected him to such an extent that on two occasions he had contemplated suicide, and thereby lay the foundation for Dr. Brown's opinion that Smith's migraine was associated with depressive episodes, typical in phases of manic-depressive psychosis, having a tendency toward suicide by a patient so afflicted.

We think the proffered testimony was relevant to the issue on trial. The evidence as to Smith's death was entirely circumstantial. In order to negative suicide and establish death by accidental means, plaintiff was permitted to adduce evidence that he was in good health, happily married, cheerful on the morning of his death, and that he attended to his business during part of that forenoon. Taken with evidence of certain physical facts attending insured's death, Dr. Brown's testimony was offered to negative and rebut the circumstances tending to show death by accidental means, and to show subjective ailments as a basis for

suicidal intent. Where the defense is death by self-destruction, the authorities hold that a reasonable latitude should be allowed in establishing that defense.

In *Falkinburg v. Prudential Ins. Co. of America,* 132 Neb. 831, 273 N. W. 478, suicide was the controverted issue. The insured died February 28, 1935, from a gunshot wound. The trial court excluded the testimony of two physicians who had examined the insured prior to his death. The purpose of the testimony was to show his physical and mental condition in August, October and December 1934, when he was examined by the physicians whose testimony was proffered. The insurance company offered to prove by one, a specialist in mental and nervous diseases, that there were indications of brain tumor and mental deterioration; the other physician found that on December 10, 1934, the insured was apprehensive, worried, easily excited, nervous and suffering from a "manic-depressive psychosis, a form of melancholia," accompanied by an agitated mental state in which he was much worried, exhibited fear and lost his sense of proportion. In reversing the judgment for plaintiff on the ground that the trial court erred in excluding the testimony offered, the court said that " 'Where circumstantial evidence is the only evidence available to a party, and the action must be determined upon the relative strength of probabilities and inferences, great latitude is allowed the parties in the adduction and admission of evidence.' 2 Jones, Commentaries on Evidence (2d Ed.) sec. 604. The more the jury can know of the surrounding facts and circumstances, the better their judgment is likely to be. The physical and mental health of the insured is a surrounding circumstance which is relevant in this case, and the testimony on this matter was unduly restricted."

In *Bertschinger v. New York Life Ins. Co.,* 166 Ore. 307, 111 P. (2d) 1016, it was held to be the rule that where suicide *vel non* is the issue and only circumstan-

tial evidence is available, a wide latitude should be accorded the parties in the admission of facts and circumstances which may shed light upon the state of mind of the alleged suicide or establish a motive for self-destruction. In *Prudential Ins. Co. of America v. Morris,* 72 F. (2d) 824, the court held that ''Any facts making it probable that his death [the insured's] was the result of suicide are relevant. Along with the other facts surrounding his death, causes which would impel him to take his own life are evidential, indicating a motive, and therefore admissible.'' In *Sees v. Massachusetts Bonding & Insurance Co.,* 243 App. Div. 400, 277 N. Y. S. 198, which involved death by monoxide asphyxiation, the court said: ''In a case of this character, where the intention of the insured is in and of itself a distinct and material fact to be ascertained by a chain of circumstances, there should be a liberal opportunity afforded for introducing any evidence which would throw light upon the issue. Facts such as declarations, acts, and disposition tending to show an intent or motive for suicide are relevant and admissible.'' (Citing cases.) In *Cady v. Fidelity & Casualty Co. of New York,* 134 Wis. 322, 113 N. W. 967, it was held that evidence of the state of health of an insured person for a considerable period of time prior to his death, where it is claimed he died by suicide, is proper as bearing on whether the deceased came to his death as the result of suicidal intent.

The time element may be of importance, but we do not think the offered evidence in the case at bar should have been excluded on that ground, because the testimony of the insured's own physician indicated that he was afflicted with chronic migraine headaches. This condition dated back for a considerable period of time and was not of recent origin. To deny defendant the right to adduce evidence tending to throw light upon the cause of death would deprive it of the defense of suicide as negativing accidental death, especially in view of the fact that plaintiff was allowed,

and properly so, to introduce evidence tending to show that death resulted through accidental means.

For the reasons indicated, the judgment of the circuit court is reversed and the cause remanded for a new trial.

*Judgment reversed and cause remanded.*

SULLIVAN, P. J., and SCANLAN, J., concur.