Mary L. Macklin, Plaintiff-Appellee, v. Commonwealth Life and Accident Company, Defendant-Appellant.

Gen. No. 53,623.

First District, Third Division.

February 19, 1970.

Arthur S. Gomberg and Joel H. Greenburg, of Chicago (Joel H. Greenburg, of counsel), for appellant.

Stradford, Lafontant, Gibson, Fisher & Cousins, of Chicago (Herbert H. Fisher, of counsel), for appellee.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

The plaintiff, the beneficiary of an insurance policy on the life of her deceased husband, sued the Common-

wealth Life and Accident Company to recover $2,000 under the accidental death provision of the policy. The defendant's answer raised three affirmative defenses: (1) that the death of the insured, Neal Macklin, was not accidental but was the result of his attacking his wife with a deadly weapon; (2) that he died from a wound intentionally inflicted by her, and (3) that he met his death while attempting to commit a felony.

A reply was filed to the affirmative defenses, and the plaintiff and defendant moved for summary judgment. After considering opposing affidavits, the transcript of the testimony at the coroner's inquest and the discovery deposition of the plaintiff, the court entered judgment for the plaintiff.

Both parties agree that there were no triable issues of material fact and that summary judgment was the appropriate remedy. Brannen v. LaSalle Nat. Bank, 18 Ill2d 116, 163 NE2d 476 (1959). The defendant's only contention on appeal is that its motion for summary judgment should have been granted instead of the plaintiff's because the actions of the insured culminating in his death preclude recovery.

Macklin died after being cut in the neck by a knife during a quarrel with his wife late in the evening of January 5, 1966. The evidence presented to the court showed that the Macklins had quarreled during their seven-year marriage and that he had struck her five or six times. One of these times was with a chair and the others were with his fists. On none of these occasions did she strike back at him.

On the night of his death she was lying fully clothed on their bed when he came into the bedroom. She accused him of having lipstick on his handkerchief. He told her it was blood and laughed at her. She picked up a vaseline bottle but he caught her wrist and took it from her. He seized her by the hair, pulled her out of bed, swung her against the bedroom door and struck her

head three times upon the edge of a trunk. A handful of her hair was pulled out before he released her. He then threw a lotion bottle and a dresser lamp at her, picked up their son's tricycle and advanced toward her. She ran into the adjoining kitchen and picked up a ten-inch long butcher knife, thinking that if he saw it he would leave her alone. She turned and went to the bedroom door. Her husband was standing at the dresser with the tricycle in his hands. He raised it over his head and raced toward her, but she was too frightened to move. She had the knife in her right hand, pointed downward at her side, next to her full skirt. She turned sideways, closed her eyes and threw up her hand to protect her face as her husband ran into her. The tricycle fell to the floor. Macklin cried out, "I'm cut" and walked out of the room.

He had been stabbed in the left side of the neck. When she took down her hand and opened her eyes she saw the wound and saw blood on the floor. She called the police. Her nephew told her he thought his uncle was dead; she exclaimed that this could not be, and ran to him and picked him up in her arms.

 If a person who is insured against accidental injury or death voluntarily engages in a fight or initiates an assault, his resulting injury or death is not deemed accidental if it is the natural and probable result of his conduct. On the other hand, if his injury or death is not reasonably foreseeable or is not the likely consequence of his conduct, it is deemed accidental.

Illustrative of the first situation are the cases of Cory v. Woodmen Acc. Co., 333 Ill 175, 164 NE 159 (1928) and Hutton v. States Acc. Ins. Co., 267 Ill 267, 108 NE 296 (1915). In Cory the insured advanced upon a youth in spite of a warning to stand back or he would be shot. He continued his attack and was killed. The

court found that the insured had reason to believe that the man he assailed was armed and that serious injury would be the probable result of his attack. In Hutton the insured was the aggressor in a fight with a man as large and powerful as himself. Hutton walked up behind the man as he was seated at a counter in a restaurant and, without saying a word, struck him a hard blow on the side of the face. In the ensuing fight Hutton's leg was broken. In seeking to recover under the accidental injury provision of his policy, Hutton contended that his broken leg was neither the anticipated nor probable consequence of his assault. The court stated:

> "Where one voluntarily and deliberately engages in a fight or brawl, and places another in a position where he, too, must fight to defend himself, it is a natural result, and one known to all sensible men as likely to follow, that one or both of the combatants will receive more or less serious injury. As to whether the assailant or the one assailed would be the more likely to be injured would depend upon the comparative strength and skill of the antagonists, as well as upon the fortunes of the combat."

Typical of the cases which hold that a person's injury or death may be accidental even though he is the initial aggressor, are White v. Penn Mut. Life Ins. Co., 272 Ill App 277 (1933) and Wylie v. Union Casualty & Life Ins. Co., 15 Ill App2d 448, 146 NE2d 377 (1957). In White there was evidence that the insured approached a man from the rear, grabbed him by the arm, jerked him around and, with his fist clenched, asked, "Where do you want it?" The man shoved him away and he fell backwards and struck his head on the sidewalk. He died

as a result of his injury. The defendant relied, as does the defendant in the present case, on the Cory and Hutton cases and contended that the beneficiary could not recover because the insured's death was brought on by his own conduct. The court, in affirming the judgment for the beneficiary, held that the trial judge was warranted in finding that the insured came to his death from accidental means. In Wylie the insured was shot to death by his wife. He had struck her on several occasions but she had resisted only once—on that occasion she struck him with her shoe when he was strangling her. On the night he met his death he twice knocked her to the floor, struck her several times and left the house. After his departure she went into the bedroom, loaded a rifle and sat down on the bed. When her husband reentered the house she heard him say, "I came back to finish the job I started." As he began to push back the drapes which covered the bedroom door, she raised the rifle and fired at the side of the door. The bullet went through the drapes and struck him. She did not know that he had been shot and she reloaded the gun. She testified that she could not see her husband before he parted the drapes and that she did not intend to shoot him. The court, in affirming the jury's verdict for the wife who was the beneficiary of her husband's insurance policy, noted that she had neither resisted his abuse nor threatened him with the gun in the past, that the gun had not been loaded for a year and a half and that the fatal shot went through the drapes before he entered the room. The court held that under these circumstances the insured could not reasonably have foreseen that his actions would probably result in his injury or death.

Whether the consequences of an insured's conduct are accidental or are natural, probable and reason-

ably foreseeable, depend upon the facts and circumstances of each individual case. In the present case, it does not appear that Macklin could have anticipated that he might be stabbed when he advanced on his wife or that he could have expected some serious injury other than being stabbed. She had never resisted him before and he had no reason to suspect that she would this time. Her prior passive behavior would not lead him to expect resistance with a deadly weapon. There is no evidence that suggests that he saw the knife in her hand. Although she secured it with the hope that the sight of it would deter him, she did not say she had it, threaten him with it or brandish it. She held it by her side and it may have been concealed, or partially hidden, by her full skirt. When she raised her hand as he rushed upon her it was an instinctive movement to shield herself from his impending blow. There is nothing in the record to indicate that she thrust the knife toward him or deliberately held it in a position where it would cut his throat; she did not know that he had run into it until he exclaimed that he had been cut. Under the evidence it cannot be said that he could have foreseen his injury or death, or that either was the probable and natural result of his attack.

The defendant also asserts that Macklin was committing a felony when he was killed—attempt murder, attempt manslaughter or attempt aggravated battery—and that recovery was barred under the following provision of the policy:

> "The Company shall not be liable for any loss to which a contributing cause was the Insured's commission of or attempt to commit a felony. . . ."

It is not seriously argued, and the evidence does not support the conclusion, that Macklin intended to kill his

wife. It is earnestly argued, however, that he was about to commit an aggravated battery upon her when he met his death. The defendant contends that this offense is a felony, the plaintiff that it is a misdemeanor. Their contentions are based on the construction each believes should be given the penalty provision of the statute:

"A person who . . . commits aggravated battery . . . shall be imprisoned in a penal institution other than the penitentiary not to exceed one year or in the penitentiary from one to 10 years." Ill Rev Stats 1965, c 38, par 12–4.

Although the argument of the parties is limited to their respective interpretations of this provision, the issue of whether the offense of aggravated battery is a felony or a misdemeanor has dimensions beyond the scope of their argument. We do not reach the issue, however, because of our conclusion that the evidence does not establish the offense of attempt aggravated battery.

A person commits a battery if he intentionally or knowingly without legal justification and by any means causes bodily harm to an individual. Ill Rev Stats 1965, c 38, par 12–3. A person commits an aggravated battery if, while committing a battery, he intentionally or knowingly causes great bodily harm, or permanent disability or disfigurement to the individual. Chapter 38, par 12–4(a). The offense of attempt is committed when a person, with intent to commit a specific crime, does any act which constitutes a substantial step toward the commission of that crime. Chapter 38, par 8–4.

 To establish attempt aggravated battery it must be shown that it was the intention of the assailant to inflict great bodily harm upon his victim. This intention may be inferred from the character of the attempt and the circumstances . surrounding the assault. The words uttered by the assailant, the weapon used and

the force of his blow ordinarily indicate the quality of his intention. Macklin's intention was not disclosed by exclamation or threat; he struck no blow; the tricycle was not per se a deadly weapon though it could have become so depending on its use. His striking her with the tricycle would have caused bodily harm, but whether he would have struck her so forcibly or repeatedly as to cause disfigurement, permanent disability or great bodily harm is purely conjectural. Among the circumstances that must be considered in determining his intention are, on the one hand, the force of his first assault—banging his wife's head on the edge of the trunk and pulling out a quantity of her hair, and the apparent force of the second assault—raising the tricycle overhead and rushing at her. On the other hand, he had released her after the first assault and there was an interlude between the first and second assaults; he apparently abandoned the attack as evidenced by his not pursuing her into the kitchen; he did not bring the tricycle down upon her or attempt to do so, even though his arms were extended and he came so close to her that the knife pierced his throat; and the tricycle fell to the floor and not upon her when he dropped it.

Distinguishing between degrees of violence is difficult and the extent to which Mrs. Macklin might have been injured is left to speculation. Without more substantial proof that her injury would have been the serious and grievous kind contemplated by the term "great bodily harm," it cannot be held that Macklin's offense, if completed, would have been an aggravated battery.

The judgment is affirmed.

Affirmed.

SCHWARTZ and McNAMARA, JJ., concur.