JAMES L. HOTWICK, Plaintiff-Appellant, v. THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Defendant-Appellee.

(No. 11423;

Fourth District—April 27, 1972.

Elmer C. Hawkins and Rex L. Brown, both of Wollen, Brown & Hawkins, of Decatur, for appellant.

Marshall A. Susler, of Owen, Roberts, Susler & Taylor, of Decatur, for appellee.

Mr. JUSTICE SMITH delivered the opinion of the court:

This action was brought against an insurance company for double indemnity benefits under an insurance policy by the beneficiary thereof. The insured died as a result of being stabbed in a fight with his step-mother and it was alleged that this was an accidental death so as to entitle the beneficiary to the double indemnity benefits. A jury found for the defendant insurance company and an appeal has been taken alleging error in the instructions given on the burden of proof and on

the definition of mental infirmity and that the verdict was contrary to the manifest weight of the evidence.

In 1955, the decedent purchased from defendant an insurance policy containing the following language:

"The Society agrees, subject to the provisions hereinafter stated, to increase the amount payable under said policy by a sum equal to the face amount thereof upon receipt of due proof, as herein required that (1) the death of the Insured resulted from bodily injuries caused directly and independently of all other causes by external, violent and purely accidental means, * * * (3) disease or illness of any kind, physical or mental infirmity, or medical or surgical treatment therefor, did not directly or indirectly cause or contribute to such death, and (4) such death was not the result of or caused by * * * (c) committing or attempting to commit an assault * * *."

The factual circumstances surrounding the decedent's death are unique and somewhat bizarre. The insured on the day of his death was visiting his stepmother in the kitchen of her home. He made several telephone calls to his wife and father and apparently engaged in an argument with them. After the telephone calls, he threw the receiver across the table. His stepmother told him to leave and he then hit her in the head with his fist. She hit him back and he threw some milk in her face. She then took out a kitchen knife and asked her small daughter to call the police. The insured then upset the kitchen table and left to pack his clothes. His stepmother, holding on to the knife, helped. Another argument ensued in which decedent started to hit her again and she hit him back. He finally finished packing and left, hitting his stepmother, who was holding the door, as he passed with his suitcase. After loading his suitcase in his truck, he started to load a box. She followed him, still holding the knife; he turned, put the box down and came towards her with clenched fists, raised arms and "a mean look on his face". She stated that she was afraid for her life and stabbed him and he subsequently died from those wounds.

■■ The instruction complained of deals with the burden of proof. The court instructed the jury that the burden was upon the plaintiff of proving that the death resulted from bodily injuries from external, violent and accidental means, and:

"Second, that mental infirmity, if any, did not directly or indirectly cause or contribute to his death.

Third, that his death was not the result of or caused by committing or attempting to commit an assault or felony."

The argument of Plaintiff is that this instruction erroneously puts the burden upon Plaintiff to show that the exclusions relating to mental in-

firmity and assault did not apply and that the instructions should have placed the burden upon the Defendant, after the death was shown to have occurred by accidental means, to prove that this death came within the exclusionary language of the policy. This instruction was, however, tendered by the Plaintiff upon the rejection of another instruction. It is well settled in Illinois that a party in order to claim error in the giving of an instruction must have objected to it. (*Russo v. Kellogg*, 37 Ill.App.2d 336, 185 N.E.2d 377.) Otherwise these errors are waived and not preserved for review. *Vasic v. Chicago Transit Authority*, 33 Ill.App.2d 11, 180 N.E.2d 347.

■■ Here the Plaintiff proposed the instruction that he now complains of. It would seem strained, indeed, for this court now to say that the Plaintiff can complain of the purported errors that he himself caused. This court is fully in accord with the following statements contained in Ill. Law & Practice, Vol. 35, Trial, par. 271, as follows:

> "The right to object to the giving or refusal of instructions may be lost by estoppel or waiver. A party cannot complain of an instruction given at his own request or in harmony with one he requested * * * *."

This court is further convinced that the law as recited in the instruction is not erroneous. The burden of proof is upon the Plaintiff to assert the positive aspects of his case. The policy provided for double indemnity in case of accidental death which was not a result of, among other things, mental infirmity or attempting to commit or committing an assault. The very language of the policy places the onus upon the claimant. The Supreme Court, in *Fidelity & Casualty Co. v. Weise*, 182 Ill. 496, 55 N.E. 540, in a similar situation involving suicide, stated as follows on pages 498—9:

> "It was essential to the right of appellee to recover that it should appear, by the preponderance of the evidence, the assured came to his death through external, violent, and accidental means * * * The presumption of the law is that all men are sane. * * * This presumption, in the absence of countervailing proof, may be sufficient within itself, to establish *prima facie* that death occurred otherwise than by self-destruction, and to cast upon the defendant company the burden of producing evidence on the point; but the existence of the presumption had no efficacy to change the rule that the obligation of proving any fact lies upon the party who asserts the affirmative of the issue."

In *Wilkinson v. Aetna Life Ins. Co.* 240 Ill. 205, 88 N.E. 550, the court held on page 211 "the burden of proof was upon the Plaintiff to show they (the injuries) were accidental and not self-inflicted." In accord is

*Smith v. Metropolitan Life Ins. Co.*, 317 Ill.App. 624, 47 N.E.2d 330.

■■ The policy language required that the death be accidental, that mental infirmity did not directly or indirectly cause this death and that the death did not result from committing or attempting to commit an assault. It is not an affirmative defense to show that these two exceptions do apply, but by the language of the policy incumbent upon the claimant to show that they do not apply. The presumption of sanity would place the burden of going forward with the evidence upon the insurer under the policy, after the death has been proved, but it does not alter the affirmative burden of proof as required by the language of the policy.

■■ Error is also alleged in the refusal of Plaintiff's requested instructions which stated that the mental infirmity had to be a direct and proximate cause of death in order to circumvent the double indemnity provision. These instructions were contrary to the language of the policy which used the terms "directly or indirectly" and hence properly refused. Although there does seem to be case support for the proposition that the mental infirmity has to be a proximate cause of the death to prevent recovery, those cases do not appear to have the same policy language as was here used and hence are not applicable.

Several of these instructions also stated that:

"If you believe that Leo Hotwick, Jr. had a mental infirmity, this does not prevent his death from being accidental if the death would not have resulted from the mental infirmity, except for the happening of an accidental injury."

These instructions appear to be difficult to understand and comprehend and were correctly refused as they would tend to confuse the jury.

■■ The Plaintiff also contends that the evidence does not support the verdict. The record here is clear and the facts are uncontested. There was a fight between the stepmother and the insured. He hit her with his fist; he overturned a kitchen table; she struck him back; she had a knife in her hand; he knew it and advanced towards her with his arms raised, his fists clenched and "a mean look on his face". His stepmother indicated that she was afraid for her life and in the scuffle she stabbed him and he died from those wounds. The evidence also revealed that the insured had a history of mental illness and had been institutionalized at various times. These facts appear sufficient to leave it to the jury to decide. The jury could have decided that the insured, attacking his stepmother, who had a knife in her hand, could have reasonably foreseen that the outcome of his attack would have been his death and therefore the death was not accidental. (*Wylie v. Union Casualty & Life Insurance Company*, 15 Ill.App.2d 448, 146 N.E.2d 377; *Henry v. Metropolitan Life Ins. Co.*, 70 Ill.App.2d 132, 217 N.E.2d 482.) The jury also could have decided

that mental infirmity directly or indirectly caused this death. In this factual background, this determination was properly left to the jury.

For the foregoing reasons, the judgment of the trial court is affirmed.

TRAPP, P. J., and CRAVEN, J., concur.