JOHN SZCZESNY, Plaintiff-Appellant, *v.* W.G.N. CONTINENTAL BROAD-CASTING CORPORATION *et al.*, Defendants-Appellees.

(No. 59505;

First District (2nd Division)—June 25, 1974.

Robert Steinbock-Sinclair, of Chicago, for appellant.

John B. Moser, of Chicago, for appellees.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Plaintiff, John Szczesny, appeals from a summary judgment entered in favor of defendants, Jewel Companies, Inc. (hereinafter Jewel) and W.G.N. Continental Broadcasting Corp. (hereinafter W.G.N.), in an action to recover damages for the infringement of a common law copyright in a certain retail-store promotional television program.

In his complaint plaintiff alleged that during the year 1959 he originated and caused to be prepared an original script for a television program entitled "At the Races" for the purpose of submission to prospective broadcasting companies; that plaintiff at all times retained full ownership of said program and has never authorized the use of the program at any time; that in 1959 W.G.N. was informed of the nature and contents of plaintiff's program; that in 1967 W.G.N. produced and presented a program entitled "Let's Go to the Races," substantially copying plaintiff's program, but without plaintiff's consent or authorization; that in 1967 Jewel entered into an agreement with W.G.N. to purchase "air time" to broadcast the program entitled "Let's Go to the Races"; and that Jewel knew or should have known through the exercise of ordinary care that the program was substantially copied by W.G.N. from plaintiff's program and without his consent. Plaintiff alleged unauthorized use by W.G.N. of his literary property right and misappropriation by W.G.N. and Jewel of the profits and benefits of his property right.

Defendants' answer denied plaintiff's allegation and alleged, by way of affirmative defense, that during the year 1959, plaintiff submitted to W.G.N. written suggestions for a television program entitled "At the Races," and that upon receiving plaintiff's suggestion W.G.N. sought and secured from plaintiff a formal written release regarding the use of his suggestions. Defendants further alleged that plaintiff's suggestions were not novel or original, were sketchy and incomplete and were not in a form which could be used for any broadcast purposes. Defendants also asserted that the program entitled "Let's Go to the Races," sponsored by Jewel and broadcast by W.G.N., was independently developed by persons other than plaintiff and was in no way based upon or appropriated from plaintiff's suggestions.

The record reveals that in a two-page letter dated February 18, 1959, plaintiff submitted to W.G.N. his "idea on a quiz game which I have

named 'At the Races' for Television or Radio programs." The first page set forth the steps involved in a program by which a code key of horses' names would appear in daily newspapers and contestants would be telephoned and asked to read the names of the winning horses and jockeys. The correct answer would allow the contestant to compete for the Daily Double or "Jackpot prize." The price money "can be the actual mutuels or a pre-set amount for win, place or show." The second page of the letter set forth variations on this game by suggesting that it can be played as "Bingo" by the use of "special dice." The final suggestion was:

> "Another method which would be easily adaptable to T.V. would be the actual filming of the races as they are run at any race track. In this method people at home can be included in a nationwide game, numbered cards can be used the same as described above. The number of races can be prearranged on each card, with the cards having different combinations of numbers, for each race. There can be one winner for each race, or it can be done as it is at the race track, WIN-PLACE OR SHOW. The awards being lesser for place and show, the money won could be the actual mutuel or any prearranged amount."

In a letter to plaintiff dated February 23, 1959, Bruce Dennis, program manager of W.G.N., acknowledged receipt of plaintiff's "At the Races program idea and release form," and stated that W.G.N. was unable to consider additions to its schedule.*

In June, 1966, Jewel purchased the rights to the use of the program "Let's Go to the Races" from one Walter Schwimmer and his associates. In 1967 that program was broadcast by W.G.N. Prior to its broadcast in Chicago by W.G.N., the program had been sold to other sponsors and had been broadcast by television stations throughout the country between 1962 and 1965. In 1963 Walter Schwimmer, Inc., obtained a statutory copyright on the program. "Let's Go to the Races" was a weekly broadcast of five pre-filmed horse races. Jewel made available to the public cards listing a number for each of the five races. If the number for one of the races corresponded to the number of the winning horse in that race, the holder of the card won a pre-arranged amount of money.

In support of their motion for summary judgment, defendants filed an affidavit of Walter Schwimmer stating that for the past 35 years he

---

* Subsequent to the filing of defendants' answer, Dennis filed an affidavit asserting that he diligently searched the files of W.G.N. in February, 1967, and October, 1970, for the purpose of locating the release allegedly given W.G.N. by plaintiff, but that due to changes of personnel and transfer of W.G.N. facilities in 1961, the release was lost. Defendants did not rely upon the issue of release in their motion for summary judgment, and that is not at issue on appeal.

has been actively engaged in the creation, development, production, promotion and sale of various radio and television programs. Since 1948 affiant created, produced and sold some 20 different programs to television stations throughout the United States, including "Movie Quick Quiz," "Championship Bridge," "Championship Bowling," "All-Star Golf," and "World Series of Golf."

In 1955 Schwimmer began formulating an idea for the development of a horse racing program for television in which a series of races would first be filmed and then used in a television program in which home viewers would attempt to select winners from each race and would be awarded prize money for the correct choice. Between May and August, 1958, Schwimmer and Sid Goltz of the Peter De Met Company began negotiations with Arlington Park Race Track regarding the filming of horse races for the proposed program. On May 5, 1958, in a letter to Peter De Met, Schwimmer referred to his program idea as including the use and distribution of racing forms and entry blanks which would be used by viewers in making their selections. In a letter dated July, 1958, to a member of the Arlington Park Jockey Club, Schwimmer referred to his proposed program as "Lets Go to the Races." In 1958 a pilot program of the horse races was filmed by Schwimmer. Defendants' Exhibit H attached to Schwimmer's affidavit is an undated document setting forth the program format in detail and explaining how the viewing audience would participate. Schwimmer averred that this document was prepared by him in 1958. Another Exhibit, I, is an undated letter to television station directors across the country. This letter briefly outlined Schwimmer's idea, but stated that no prizes were involved. Schwimmer averred that this letter was prepared on March 13, 1959. The record also contains numerous negative responses, dated in 1959, from television station directors to Schwimmer, acknowledging receipt of a March 13, 1959, letter.

In 1962 Schwimmer filmed 26 ½ hour shows and began promoting "Let's Go to the Races." Shortly thereafter the program was purchased by sponsors in various parts of the country and was broadcast by 6 to 12 television stations. On June 21, 1966, Schwimmer and Jewel entered into a contract whereby Jewel purchased rights to the use of the program. Jewel thereafter entered into a contract with W.G.N. for broadcast of the program. On January 14, 1967, "Let's Go to the Races" premiered on W.G.N. Walter Schwimmer averred that prior to the filing of this cause he had not known of plaintiff and was never aware that plaintiff had communicated to W.G.N. his ideas regarding a television program on horse racing; and that the "Let's Go to the Races" program was "conceived and created solely by me, was refined in several minor respects

by one of my employees, Mr. Arthur Pickens, and was developed, produced and sold solely by Walter Schwimmer, Inc."

In a deposition taken July 15, 1971, Schwimmer stated:

"To my knowledge I originated [the idea] close to [the context in which W.G.N. produced the program]. We always refined it. The idea was to have some horse races, and * * * have a merchandising idea whereby a person had to pick up a ticket or program or something in connection with the horse races, but in a broad way, the original idea was very much like the executed idea."

Schwimmer further stated that the idea in its inception was his and that only Arthur Pickens worked on it with him. He stated: "If Pickens had worked on it, he may have worked on maybe developing one ticket as against another ticket or developing a better way to shoot the races * * *."

The record also includes the affidavit of Arthur E. Pickens who averred that from 1958 to 1968 he was employed by Walter Schwimmer, Inc., as vice-president in charge of programs. Pickens confirmed the accuracy of Schwimmer's affidavit as to the circumstances under which "Let's Go to the Races" was created, developed, produced and sold. In addition Pickens stated that in 1958 he was personally involved in developing special filming techniques for use in the pilot film of the program; that at least 2 to 4 years before the program was sold to Jewel, it was broadcast in Minneapolis, Minnesota, and locations in the southern United States. Pickens, too, averred that prior to the filing of this cause in 1970 he had never known of plaintiff, had never seen any correspondence regarding plaintiff and was unaware of plaintiff's alleged idea.

In his motion in apposition to defendants' motion for summary judgment, plaintiff attacked defendants' motion and affidavits in support thereof as merely conclusions concerning the creation and development of the program "Let's Go to the Races," and attacked the credibility of defendants' affiants. Attached to plaintiff's motion were an affidavit of plaintiff's counsel and the affidavit of plaintiff which again traced the origin and submission of his idea to W.G.N. Plaintiff stated that in January and February, 1967, he contacted W.G.N.; that not until March 21, 1967, did W.G.N. raise for the first time the issue of independent development; that in 1967 he unsuccessfully attempted to speak with Schwimmer and that he did speak with Pickens who told plaintiff to "sue them"; that in 1969 W.G.N. revealed that they were unable to locate plaintiff's original script and the alleged release; and that plaintiff was orally advised by counsel for W.G.N. that Schwimmer's idea dated back to 1963, not prior to 1959.

On May 3, 1973, the court entered an order reciting that on the record no genuine issue of material fact existed, and granted defendants' motion for summary judgment.

Plaintiff filed a motion for rehearing on the grounds that defendant's description of Schwimmer's proposal and Schwimmer's own description of his idea were not similar to the program that was ultimately presented to the public, and that therefore the defense of independent development is inappropriate. Plaintiff alleged that a comparison of plaintiff's proposed idea and of Schwimmer's proposal with the actual program broadcast constituted a material issue of fact. On June 14, 1973, the trial court denied plaintiff's motion.

On appeal plaintiff's contention is that the trial court erred in entering summary judgment in defendants' favor because the court erroneously was led to believe that the defense of independent development was applicable. Plaintiff argues that, in fact, plaintiff's proposal and Schwimmer's proposal, allegedly formulated prior to plaintiff's submission to W.G.N., are dissimilar. Thus independent development is not a defense in this case, and the similarity between plaintiff's proposal and the program broadcast by W.G.N. raises the inference of copying.

■■ In the field of common-law copyright, an idea is entitled to protection as a property right where the idea is novel or original, where it has been reduced to expression in a concrete form, and where the creator of the idea has not published it or consented to its publication. (*John W. Shaw Advertising, Inc. v. Ford Motor Co.*, 112 F. Supp. 121 (N.D.Ill.).) Where such a protectible property right is appropriated, a cause of action for common law copyright infringement based upon a tort theory or a quasi-contract theory arises. In order to recover plaintiff must prove copying by defendant. An inference of copying arises upon a showing of substantial similarity between plaintiff's work and defendant's work and access to plaintiff's work by defendant. The question of similarity between the two works and the question of copying are generally questions of fact. (*Roberts V. Dahl*, 6 Ill.App.3d 395, 286 N.E. 2d 51; *Belt v. Hamilton National Bank*, 108 F. Supp. 689 (D.D.C.), *aff'd*, *Hamilton National Bank v. Belt*, 210 F.2d 706 (D.C. Cir.).) However, whether there is any question to present to the trier of fact is, initially, a question of law. *Roberts v. Dahl, supra.*

■■ The record establishes that plaintiff did have a common law copyright in his program ideas, and defendants, in their motion for summary judgment, did not dispute this. Defendants stated that no genuine issue as to any material fact existed for the reasons that defendants established that the program "Let's Go to the Races" was independently developed

by persons who had no access to plaintiff's ideas, and that plaintiff's program was not substantially similar to the actual program broadcast.

■■ The sole function of a court in reviewing the trial court's entry of summary judgment is to determine whether the trial court correctly ruled that no genuine issue of material fact has been raised for trial. In the instant case, plaintiff presented sufficient evidence of similarity between his idea and the "Let's Go to the Races" program and of access by W.G.N. to his idea to raise an inference of copying. However, it is well established that where defendant asserts the defense of independent development, the inference of copying is dispelled, and the court may enter summary judgment in favor of defendant. *Roberts v. Dahl, supra.*

To determine whether the defense of independent development is applicable, we initially must determine whether the evidence presented by the alleged independent developer demonstrates that he did develop the program actually broadcast. (*Stanley v. Columbia Broadcasting System, Inc.*, 35 Cal.2d 653, 221 P.2d 73.) Therefore, we must compare Schwimmer's format to the televised version of the "Let's Go to the Races" program. The standard to be applied to determine similarity is the common knowledge of the average reader, observer, spectator or listener. *Teich v. General Mills, Inc.*, 170 Cal. App.2d 791, 339 P.2d 627.

The record reveals that in 1955 Walter Schwimmer conceived an idea for a television program utilizing filmed horse races. In the spring and summer of 1958 Schwimmer commenced work on filming techniques, and referred to his program idea as including the use and distribution of racing forms and entry blanks whereby the viewing audience would attempt to select the winners. Defendants' Exhibit A, a letter from Schwimmer to Peter De Met, dated May 5, 1958, specifically mentions this method of audience participation. Also in 1958 Schwimmer referred to his program as "Let's Go to the Races," and filmed a pilot show. This is clear from letters written by Schwimmer in 1958. Plaintiff concedes that all these events occurred prior to plaintiff's submission of his idea to W.G.N. Defendants' Exhibit I, a March, 1959 letter from Schwimmer to television station directors around the country, stated that the proposed program was a horse racing program tied in with a merchandising idea:

> "[E]ach race would have its own racing program listing the horses, jockeys, post position * * *. Each week the viewer would be able to obtain these racing programs at the sponsor's outlets. * * *
>
> However, * * * there are no prizes involved, no gambling of any kind, or any mention of any betting."

Thus the record is unclear as to the method of audience participation

developed by Schwimmer. In his affidavit Schwimmer averred that he and his associate refined the program format from 1958 until 1962 when the show was initially sold to a sponsor. The record is barren of any other facts which indicate how and when Schwimmer refined his format. In his affidavit Pickens confirmed the accuracy of Schwimmer's affidavit, but specifically, he merely averred that in 1958 he was personally involved in developing special filming techniques for use in the pilot film. We are of the opinion that the method of audience participation in "Let's Go to the Races" is a salient feature of the idea entitled to protection, for the method of audience participation would directly affect the saleability of the program to a sponsor, and would also be an important factor in determining how conducive to television broadcasting such a program would be. Defendants' evidence of independent development lacks proof of Schwimmer's refinement of the audience participation aspect of the game. We are left only with Schwimmer's conclusionary statement that the format described in his affidavit and deposition was "refined" by him and was the program copyrighted by him in 1963 and broadcast by W.G.N. in 1967. Similarly, W.G.N. states that it in no way was involved in the development of the program broadcast in 1967.

■■ From the state of the record, we cannot conclude that defendants presented conclusive evidence of independent development of the game show. Under these circumstances defendants' defense of independent development is an issue of fact to be determined upon a trial. *Roberts v. Dahl, supra,* relied upon by defendants, is not controlling here because in *Roberts* the inference of copying was dispelled by defendants' clear and uncontradicted evidence of independent development. Accordingly, we hold that summary judgment was improvidently granted, and we reverse and remand with directions that the trial court set the cause for trial.

Reversed and remanded with directions.

HAYES, P. J., and DOWNING, J., concur.