SHERYL JACO RUSSELL, Adm'r of the Estate of Gerald L. Jaco, Deceased, Plaintiff-Appellee, *v.* METROPOLITAN LIFE INSURANCE COMPANY, Defendant-Appellant.

Fourth District   No. 17476

Opinion filed August 9, 1982.

MILLS, J., dissenting.

Ross E. Canterbury, of Westervelt, Johnson, Nicoll & Keller, of Peoria, for appellant.

Stephen R. Myers, of Clinton, for appellee.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

Plaintiff, Sheryl Jaco Russell, as administrator of the estate of Gerald L. Jaco, deceased, brought suit in the circuit court of DeWitt County against defendant, Metropolitan Life Insurance Company, seeking recovery of certain benefits under a group policy issued by

defendant. The policy was held by decedent's employer, Caterpillar Tractor Company. The decedent was an insured, and his estate was his beneficiary. Defendant paid plaintiff her claim of $15,000 under the regular life insurance provision of the policy. The suit was for an additional benefit in the sum of $14,000, payable if the death resulted "solely through accidental means." After both parties moved for summary judgment, the trial court granted summary judgment for plaintiff in the sum of $14,000 on September 4, 1981. Defendant has appealed. We affirm.

Plaintiff's claim arose from Part III of the policy which provided for additional benefits for an insured employee who sustained "bodily injuries solely through accidental means." Excluded from the foregoing coverage were deaths "caused or contributed to by disease" and those "caused by or resulting from intentional self destruction or intentionally self-inflicted injury." The parties have stipulated that at the time of decedent's death he suffered from alcoholism which was a "disease" within the meaning of Part III.

The other material facts before the court at the time of the hearing on the motion are also not in dispute. Gerald Jaco, the decedent, was found dead in his truck on December 10, 1979. Next to the body was an open bottle of vodka. An analysis of his blood showed the presence of 0.475 percent alcohol. The parties stipulated that 0.45 percent or greater of alcohol in the blood is considered lethal and that decedent's death resulted from the consumption of a lethal quantity of alcohol. Sheryl Jaco Russell, plaintiff, stated in her deposition that decedent had been an alcoholic during the 3½ years of their marriage and that on occasion she would find him unconscious in his truck or in the basement. In 1979, decedent had received treatment and counseling for alcoholism at Proctor Hospital in Peoria and at St. Mary's Hospital in Decatur. Late in 1979, decedent received counseling for alcoholism and depressive neurosis from the DeWitt County Human Resource Center.

Defendant has withdrawn with prejudice its defense that decedent's death was caused by or resulted from intentional self-destruction or intentionally self-inflicted injury within the meaning of the exclusionary provisions of Part III of the policy. We agree with the trial court the information before the court also refuted as a matter of law defendant's claim, under another exclusionary provision of Part III, that the death was "caused or contributed to by disease."

In *Marsh v. Metropolitan Life Insurance Co.* (1979), 70 Ill. App. 3d 790, 796, 388 N.E.2d 1121, 1126, the appellate court reversed a judgment entered on a verdict in favor of the defendant in a suit

brought by beneficiaries for additional indemnity under policy provisions identical to those here. The decedent, a heroin addict, died after a self-administered overdose of heroin. The evidence did not indicate that the decedent intended to kill himself. The court stated that in determining the cause of death, it "need not seek out the cause of the act of self-injection, *i.e.*, the cause of the cause." (70 Ill. App. 3d 790, 796, 388 N.E.2d 1121, 1126.) (In *Marsh*, the court presumed that heroin addiction was a disease but noted that it was questionable whether heroin addiction was, in fact, a disease within the meaning of the insurance policy.)

■ In *Burns v. Metropolitan Life Insurance Co.* (1936), 283 Ill. App. 431, the insured died from a fall to the sidewalk from her apartment window. There was evidence indicating that she may have had a dizzy spell as a result of arteriosclerosis and hypertension. The insurance company contended that the plaintiff failed to show that the decedent's death was not contributed to directly or indirectly by a disease or bodily infirmity. The court said:

> "[W]e are inclined to the opinion that under the uncontradicted evidence here, it cannot be said that there is any proof from which the court could reasonably find that disease or bodily or mental infirmity was either an 'immediate' or 'cooperative' cause of the death of the insured. The means of death being accidental and the death being the immediate result of these accidental means, the accident was the legal cause of death and plaintiff is entitled to recover." 283 Ill. App. 431, 441.

We find appropriate, as did the court in *Burns*, Lord Bacon's maxim, "It were infinite for the law to consider the causes of causes, and their impulsions one of another; therefore it contenteth itself with the immediate cause." (283 Ill. App. 431, 438.) In the present case, the immediate cause of decedent's death was the lethal content of alcohol in his body. While alcoholism might have provided the desire to drink, mere desire does not stop a heart or cause the lungs to cease functioning. Therefore, alcoholism can only be considered as a *remote* cause and not a contributing cause of death. Had defendant submitted evidence that alcoholism had rendered decedent's body less capable of surviving the dose of alcohol ingested, there would have been a question as to whether a disease contributed to decedent's death. No such evidence was presented.

A more difficult question is whether, based upon the information before the trial court, it could properly determine as a matter of law that decedent's death resulted "solely through accidental means."

Both of the parties moved for summary judgment. We are aware

of the theory that, in such a case, because both parties had represented to the court that the case presented no factual issues, the party against whom summary judgment was entered cannot complain unless that party was entitled to summary judgment in its favor. (See *Allen v. Meyer* (1958), 14 Ill. 2d 284, 152 N.E.2d 576; *Comisky v. Farm Dealer Supply, Inc.* (1981), 99 Ill. App. 3d 807, 426 N.E.2d 16; *Northwestern Mutual Life Insurance Co. v. Wiemer* (1981), 96 Ill. App. 3d 549, 421 N.E.2d 1002.) However, the majority is not in agreement as to the application of that theory. (See *Nussbaum v. Williams* (1980), 86 Ill. App. 3d 272, 407 N.E.2d 1139; *Perlman v. Time, Inc.* (1978), 64 Ill. App. 3d 190, 380 N.E.2d 1040.) Because the trial court correctly ruled the death resulted "solely through accidental means" as a matter of law, we need not wrestle with the problem of the effect of cross motions for summary judgment.

Our supreme court's most recent interpretation of the phrase "accidental means" appeared in *Taylor v. John Hancock Mutual Life Insurance Co.* (1957), 11 Ill. 2d 227, 142 N.E.2d 5. In that case, Frank Owen had conspired with two other men to burn down a house in order to collect on the insurance. The three men poured 10 gallons of gasoline on the floor and furniture of the house. While Owen was in the bedroom collecting bed clothing, the gasoline was ignited, apparently by a furnace pilot light in the living room. Owen was incinerated. His life insurance policy provided that death benefits would be paid if death occurred as a result of bodily injuries sustained solely through accidental means. A suit brought for recovery under the above provision was heard at bench. A judgment for the insurer was reversed by the appellate court. (*Taylor v. John Hancock Mutual Life Insurance Co.* (1956), 9 Ill. App. 2d 330, 132 N.E.2d 579.) The supreme court affirmed the appellate court thus determining as a matter of law that the arsonist's death resulted from accidental means.

In interpreting the phrase "accidental means," the supreme court said:

> "In Illinois, the courts have adopted a liberal attitude in their interpretation of this common insurance provision. In effect, 'accidental means' has been held to be synonymous with 'accidental result,' and defined as something which happens by chance or fortuitously, without intention or design, and which is unexpected, unusual and unforeseen. (See, *e.g., Yates v. Banker's Life & Casualty Co.*, 415 Ill. 16; *Rodgers v. Reserve Life Insurance Co.*, 8 Ill. App. 2d 551.)" *Taylor v. John Hancock Mutual Life Insurance Co.* (1957), 11 Ill. 2d 227, 230, 142 N.E.2d 5, 6.

The majority of early opinions dealing with the phrase "accidental means" contain obligatory citations to the United States Supreme Court case, *United States Mutual Accident Association v. Barry* (1889), 131 U.S. 100, 33 L. Ed. 60, 9 S. Ct. 755. In *Barry*, the insured, along with two companions, jumped from a four- or five-foot-high platform. The two companions landed safely but the insured suffered internal injuries and died a few days later. The Supreme Court sustained a jury verdict against the insurance company and held that the trial court had properly instructed the jury as follows:

"[I]f a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual, occurs which produces the injury, then the injury has resulted through accidental means." 131 U.S. 100, 121, 33 L. Ed. 60, 67, 9 S. Ct. 755, 762.

The quoted language suggests that it is not enough for the resulting injury to be unforeseen; rather, there must be an unforeseen and unexpected cause of the injury. The United States Supreme Court later qualified *Barry* in *Landress v. Phoenix Mutual Life Insurance Co.* (1934), 291 U.S. 491, 78 L. Ed. 934, 54 S. Ct. 461, and expressly made the distinction between accidental means and accidental result. In *Landress*, the decedent suffered a sunstroke while playing golf. His insurance policy provided recovery if death resulted from injuries effected through "external, violent and accidental means." The Supreme Court affirmed a judgment for the insurer stating "the carefully chosen words defining liability distinguish between the result and the external means which produces it" (291 U.S. 491, 496, 78 L. Ed. 934, 936, 54 S. Ct. 461, 462) and that recovery would be denied even though the death from sunstroke was an accident. The court concluded the death was not from accidental means because the decedent had voluntarily exposed himself to the sun's rays.

The *Landress* case is significant because of a dissenting opinion by Justice Cardozo which was a portent of things to come in Illinois. In Justice Cardozo's view, the means and the result were inseparable and if the result was accidental, so also was the means. Cardozo warned that "[t]he attempted distinction between accidental results and accidental means will plunge this branch of the law into a Serbonian Bog." (291 U.S. 491, 499, 78 L. Ed. 934, 938, 54 S. Ct. 461, 463.) Whatever may have been the rationale of Illinois pre-*Taylor* cases, the opinion in that case made clear that Illinois would thereafter avoid the "Serbonian Bog." The opinion established that the

phrase "accidental means" would be interpreted to cover unintentional and unforeseen results. It focused analysis upon the foreseeability of the injury for which recovery was sought.

Discussions of accidental causes are conspicuously absent in opinions subsequent to *Taylor*. (*Marsh v. Metropolitan Life Insurance Co.* (1979), 70 Ill. App. 3d 790, 388 N.E.2d 1121; *Hotwick v. Equitable Life Assurance Society* (1972), 5 Ill. App. 3d 327, 282 N.E.2d 222; *Macklin v. Commonwealth Life & Accident Co.* (1970), 121 Ill. App. 2d 119, 257 N.E.2d 256; *Passarella v. Board of Trustees* (1969), 106 Ill. App. 2d 448, 245 N.E.2d 913; *Henry v. Metropolitan Life Insurance Co.* (1966), 70 Ill. App. 2d 132, 211 N.E.2d 482.) In determining the foreseeability of an injury, the courts usually inquire whether the injury was the "natural and probable consequence" of the insured's conduct. *Macklin*; *Passarella*; *Henry*.

Plaintiff strongly asserts the analogy between *Marsh* and the instant case to support its contention that the decedent's death here arose, as a matter of law, solely "through accidental means." The trial court deemed the precedent to be controlling. We agree that the analogy is almost complete. There the deceased, an addict, ingested heroin. Here the deceased, an alcoholic, ingested alcohol. If one of the deaths was more likely to have been anticipated and less likely to be accidental than the other, it would have been the death from the ingestion of heroin.

The *Marsh* court concluded that the death there was no more foreseeable than that held as a matter of law to be from "accidental means" in *Taylor* where the decedent had deliberately spilled 10 gallons of gasoline in a dwelling and then been incinerated when a pilot light ignited the gasoline. The *Marsh* court also deemed the death to have been no more foreseeable than the death in *Rodgers v. Reserve Life Insurance Co.* (1956), 8 Ill. App. 2d 542, 132 N.E.2d 692, cited in *Taylor* where the decedent had driven an automobile on a country road at night at a speed of 100 miles per hour. The appellate court not only reversed the *Marsh* trial court judgment for the insurer, but also remanded the case with directions that judgment be entered for the plaintiffs-beneficiaries. Thus, the appellate court held as a matter of law that the death arose "solely through accidental means."

■ The *Marsh* opinion recognized that inherent in *Taylor* was a determination that the test of foreseeability in the interpretation of insurance policies differs from that in tort or criminal law. We agree. Clearly, the death of the arsonist in *Taylor* could have been found to have been foreseeable had a suit in tort arisen from that episode. Likewise, death of an accomplice could have been deemed foreseeable

had the arsonist survived and been charged with involuntary manslaughter. Because *Taylor* set a high threshold of likelihood as being necessary to even raise an issue of fact as to whether an injury or death was foreseeable within the interpretion of policies of the nature before us, we can only conclude that where, as here, the death was no more to be anticipated than in *Taylor*, no factual question existed and the death was unforeseeable as a matter of law.

As *Taylor* is the latest supreme court case on the question of the sufficiency of evidence necessary to raise a factual question as to foreseeability, its precedent is binding upon us regardless of subsequent appellate court decisions. However, we do not find any appellate court decision called to our attention to be inconsistent with our determination that no factual issue as to foreseeability existed here. (*McCall v. National Life & Accident Insurance Co.* (1981), 95 Ill. App. 3d 737, 420 N.E.2d 685; *Funchess v. Metropolitan Life Insurance Co.* (1981), 94 Ill. App. 3d 871, 419 N.E.2d 706.) *Hotwick*, and *Henry* involved attacks by the decedent upon someone else. This conduct would be more likely to generate protective or retaliatory conduct from others that would result in the death of the attacker than would overimbibing be likely to result in the death of the imbiber. The same would be true of *Passarella* where the insured was killed while attempting a burglary. In *Robinson v. Metropolitan Life Insurance Co.* (1979), 74 Ill. App. 3d 698, 393 N.E.2d 738, the court upheld a judgment on a verdict in favor of the insurer because there was evidence that the decedent's death resulted from disease. In *Body v. United Insurance Co. of America* (1979), 72 Ill. App. 3d 594, 391 N.E.2d 19, the decedent died from a disease contracted post-surgery. In all other cases where the question of the death resulting from accidental means was stated to be one for the trier of fact, the statement was made in the context of affirming a judgment for the beneficiary and was, therefore, dictum.

█ We affirm the summary judgment entered in favor of the plaintiff and against the defendant.

Affirmed.

LONDRIGAN, J., concurs.

JUSTICE MILLS, dissenting:
With great respect, I must dissent.

It is true that the case of *Marsh v. Metropolitan Life Insurance Co.* (1979), 70 Ill. App.3d 790, 388 N.E.2d 1121, is essentially indistin-

guishable from the case before us. However, for those who are inclined to follow after *Marsh* and the majority, I suggest they proceed circumspectly.

The principles governing this case are well established. The test of "accidental means" in Illinois is whether the insured's injury was unintended and unforeseen. (*Taylor v. John Hancock Insurance Co.* (1957), 11 Ill. 2d 227, 142 N.E.2d 5.) The parties stipulated that decedent did not intentionally take his life. Therefore, the question is whether decedent's death was *foreseeable*. In determining the foreseeability of an insured's injury, the courts usually inquire whether the injury was the "natural and probable consequence" of the insured's conduct. (*Yates v. Banker's Life & Casualty Co.* (1953), 415 Ill. 16, 21, 111 N.E.2d 516; *Macklin v. Commonwealth Life & Accident Co.* (1970), 121 Ill. App. 2d 119, 257 N.E.2d 256; *Rodgers v. Reserve Life Insurance Co.* (1956), 8 Ill. App. 2d 542, 132 N.E.2d 692.) The *Marsh* court described the foreseeability standard as follows:

> "The test of foreseeability in these circumstances appears to be an objective one, phrased in terms of a contingency 'known to all sensible men as likely to follow' as a natural result of one's conduct. (*Hutton v. States Accident Insurance Co.,* 267 Ill. 267, 269 (1915).) It has also been phrased in the objective terms of a contingency which 'any man with ordinary intelligence and prudence *** could have reasonably foreseen.' *Cory v. Woodmen Accident Co.,* 333 Ill. 175, 182 (1928). See also *Yates v. Bankers Life & Casualty Co.,* 415 Ill. 16, 21-22 (1953)." 70 Ill. App. 3d 790, 792, 388 N.E.2d 1121, 1123.

In the present case, the trial judge apparently found—as a matter of law—that decedent's death was unforeseeable and entered summary judgment for plaintiff. The function of an appellate court in reviewing the trial court's entry of summary judgment is to determine whether the trial court correctly ruled that no genuine issue of material fact had been raised for trial. (*United Security Insurance Co. v. Mason* (1978), 59 Ill. App. 3d 982, 376 N.E.2d 653; *Szczesny v. W.G.N. Continental Broadcasting Corp.* (1974), 20 Ill. App. 3d 607, 315 N.E.2d 263.) Even where the facts are undisputed, if fair-minded persons may draw differing inferences from those undisputed facts, summary judgment cannot be granted. *Cuthbert v. Stempin* (1979), 78 Ill. App. 3d 562, 396 N.E.2d 1197; *Gagliardo v. Vodica* (1978), 58 Ill. App. 3d 1053, 374 N.E.2d 1302.

It is well established that whether the consequences of an insured's conduct are foreseeable depend upon the facts and circumstances of each individual case. (*McCall v. National Life & Accident*

*Insurance Co.* (1981), 95 Ill. App. 3d 737, 420 N.E.2d 685; *Macklin v. Commonwealth Life & Accident Co.* (1970), 121 Ill. App. 2d 119, 257 N.E.2d 256; *Wylie v. Union Casualty & Life Insurance Co.* (1957), 15 Ill. App. 2d 448, 146 N.E.2d 377.) Accordingly, the pivotal question before this court is whether a fair-minded person could have inferred from the particular facts and circumstances of this case that decedent's death was the natural and probable result of his conduct.

The record shows that such an inference could have been made. Decedent had been an alcoholic for many years. Several times he had been found unconscious from drinking too much and, consequently, he must have had an awareness of the effect a certain amount of alcohol would have on him. There was evidence indicating that he was aware of the dangers of alcoholism and that he knew he could die from acute alcohol poisoning by drinking a pint or quart of alcohol. The natural effect of alcohol, when taken in excess, is that of a depressant on the nervous system. It is not improbable that the consumption of alcohol, in an amount great enough to raise the blood-alcohol content to .475 percent, would sedate the nervous system to the point where the heart and lungs cease to function. A fair-minded person could have inferred that decedent's death was the natural and probable result of his voluntary conduct.

In my view, therefore, summary judgment was improper.

The majority ignores the preceding analysis and adopts the misconceived test of foreseeability espoused in *Marsh.* This new test is that when a death is no more to be anticipated than the arsonist's death in *Taylor*, no factual question exists and the death is unforeseeable as a matter of law. The majority gives no explanation, no principled analysis, as to *how* it determined that an alcoholic's death from acute alcohol poisoning is no more foreseeable than an arsonist's death from an ill-timed fire. As the court in *Marsh,* the majority here is silent with respect to how a court is to quantitatively appraise the foreseeability of a given death and then compare it with the foreseeability of a death occurring under entirely different facts and circumstances. Future "accidental means" cases may now be decided by mere intuition rather than through principled analysis.

The supreme court in *Taylor* directed us away from Justice Cardozo's Serbonian Bog by holding that "accidental means" is synonymous with "accidental results." It appears the majority has found another path to that marshy ground.