**Joan HALEY, as Independent Administrator of the Estate of John Haley, deceased, Plaintiff,**

**v.**

**AMERICAN INTERNATIONAL LIFE ASSURANCE COMPANY OF NEW YORK, a foreign corporation, Defendant.**

No. 90 C 4911.

United States District Court,
N.D. Illinois, E.D.

March 26, 1992.

Patrick Christopher Keeley, Piccione, Keeley & Associates, Wheaton, Ill., Peter Haley, Knecht, Haley, Lawrence & Smith, San Francisco, Cal., for plaintiff.

Fred E. Schulz, Elizabeth Regan Daniels, Wildman, Harrold, Allen & Dixon, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

MAROVICH, District Judge.

On October 23, 1991, the plaintiff, Joan Haley ("Mrs. Haley"), acting in her capacity as administrator of the estate of her husband, John Haley ("Mr. Haley"), filed this action against American International Life Assurance Company of New York ("AI Life") to recover accidental death benefits Mrs. Haley claims are due under her husband's employee benefits plan ("plan"). The plan was issued by AI Life pursuant to the Employee Retirement Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B). Mrs. Haley filed this motion for summary judgment pursuant to Fed.R.Civ.P. ("Rule") 56. In her motion, Mrs. Haley contends that, as a matter of law, her husband's death constitutes "bodily injury caused by accident ..." within the meaning of the plan and, therefore, that AI Life should not have denied her claim for accidental benefits. AI Life has filed a cross-motion for summary judgment. For the following reasons, we grant AI Life's cross-motion for summary judgment and deny Mrs. Haley's motion.

## BACKGROUND

On the morning of December 12, 1989, John Haley, fifty-three, left his home for work at approximately 8:00 a.m. When he left, he looked normal and appeared to be feeling fine. Mr. Haley returned home, however, about a half hour later complaining that he did not feel well. He told his wife that he was going to get a glass of water, undress and rest. A few minutes later, Mrs. Haley heard a glass break, ran into the bedroom and found her husband unconscious on the bed. Mrs. Haley called the paramedics and Mr. Haley was rushed to the emergency room at Edgewater Medical Center.

When Mr. Haley arrived at Edgewater Medical Center, he was in a state of cardiopulmonary arrest. Despite the lengthy efforts of the attending physician, Dr. Thomas, to resuscitate Mr. Haley, he never regained consciousness. Although Mr. Haley had a history of heavy smoking and alcohol abuse, he had never experienced any difficulties with his heart or exhibited any indication or symptoms of heart disease.

Dr. Thomas diagnosed Haley's condition at the time of death as "cardiopulmonary arrest." As the doctor explained, the diagnosis simply means that "he stopped breathing, his heart stopped working." Dr. Thomas concluded that Mr. Haley had suffered a heart attack which caused the cardiac arrest and that the heart attack had not been caused by any "trauma" or "foul play."

Mr. Haley's death certificate indicates that the immediate cause of death was "atherosclerotic cardiovascular disease," which is the build-up of cholesterol plaques in the cardiovascular system. Although the presence of this disease cannot be determined without an autopsy, the medical examiner/coroner testified that he listed this disease as the cause of death for Mr. Haley because it is a common reason for death in similar circumstances. The medical examiner/coroner also concluded that Mr. Haley died of natural causes, the same conclusion that Dr. Thomas reached.

At the time of his death, Mr. Haley was covered under an accidental death and dismemberment policy ("policy") issued to his employer, Rusch, Inc., by AI Life.[1] Rusch sponsored and maintained the policy with

---

1. Rusch also sponsored a group-term life insurance policy. Joan Haley has received payment under this policy.

AI Life as part of Rusch's employee benefits plan. As a Rusch employee, and pursuant to a specific endorsement to the policy, Mr. Haley was a participant and Class II insured under the plan. It is undisputed that the policy was in full force and effect on the day Mr. Haley died.

Under the policy, accidental death benefits of $100,000 are payable to Class II insured, including Mr. Haley, provided that conditions of the contract are met. The policy provides that it will pay its "Principle Sum" ("$100,000") as an indemnity upon the death of an insured person if that death results from an "injury" as defined in the policy. The policy provides in part:

> "Injury" wherever used in the policy means bodily injury caused by an accident and resulting directly and independently of all other causes in loss covered by the policy....

Following Mr. Haley's death, Mrs. Haley filed a claim with AI Life to recover accidental benefits under Class II of the policy. On June 25, 1990, AI Life formally denied Mrs. Haley's claim and notified her of her right to appeal this denial. In its denial letter, AI Life stated that after a review of both the medical records from Edgewater Medical Center and an interview with Mrs. Haley, it had determined that Mr. Haley's death did not fall within the policy's coverage for accidental death because "the death was not the result of an injury caused by an accident." The letter also stated that "[t]his loss, which was a fatal heart attack, was due to natural causes and doesn't fall under the policy guidelines as a compensable loss." After AI Life denied her claim, Mrs. Haley filed the present action to recover the accident benefits under the policy. Both parties filed motions for summary judgment.

## DISCUSSION

■ Summary judgment is appropriate if "the pleadings, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. In a summary judgment proceeding, the court "must view the record and all inferences to be drawn from it in the light most favorable to the non-movant." *Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir.1991). The movant's burden, however, "may be discharged by 'showing' ... that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ Benefit provisions of an ERISA group life insurance plan must be interpreted under principles of federal substantive law. *Wickman v. Northwestern National Ins. Co.*, 908 F.2d 1077, 1084 (1st Cir.) *cert. denied*, — U.S. —, 111 S.Ct. 581, 112 L.Ed.2d 586 (1990). Since federal common law on the issue of insurance benefits is still in its formative stage, a federal court should consider and draw upon all state court experiences that deal with factually similar situations in reaching its interpretation of an insurance plan. *Id.* at 1084; *see also Senkier v. Hartford Life & Accident Ins. Co.*, 948 F.2d 1050 (7th Cir.1991); *Kreml v. Diamond Shamrock Corp.*, 701 F.Supp. 1400 (N.D.Ill.1988). Therefore, we will look to state law for guidance.

To recover under the policy, Mrs. Haley has the burden of establishing that Mr. Haley's death falls within the terms of the policy. *Wahls v. Aetna Life Ins. Co.*, 122 Ill.App.3d 309, 311, 77 Ill.Dec. 843, 461 N.E.2d 466 (1st Dist.1984). The policy clearly states that death is only covered if it is "caused by an injury." The policy defines "injury" as "bodily injury caused by an accident resulting directly and independently of all other causes." Therefore, the issue before the court is whether, as a matter of law, Mrs. Haley has shown that her husband's death resulted from "bodily injury caused by an accident" under the language of the insurance policy.

The term "accident" is not defined in the policy. Since it is not defined, Mrs. Haley has the burden of proving that Mr. Haley's death was accidental, as the term is commonly understood. *See Senkier*, 948 F.2d 1050. Again, we look to factually similar federal and state court cases to aid in our

interpretation of the plain meaning of this policy term.

The word " 'accident' normally designates an unforseen occurrence, usually of untoward or disastrous character, or an undesigned sudden or unexpected event of an inflictive or unfortunate character.... The natural and ordinary consequences of an act do not constitute an 'accident.' " *Farmers Elevator Mutual Life Ins. Co. v. Burch,* 38 Ill.App.2d 249, 252, 187 N.E.2d 12 (4th Dist.1972); *in accord Russell v. Metropolitan Life Ins. Co.,* 108 Ill.App.3d 417, 420–23, 64 Ill.Dec. 160, 439 N.E.2d 89 (4th Dist.1982). As a general rule, in the absence of any unexpected or unforeseen trauma, external force or event which causes or triggers a heart attack, it is presumed that the death is a death by natural causes, not by an accident. *See Riesterer v. Crown Life Ins. Co.,* 653 F.2d 268, 269 (6th Cir.1981); *Benante v. Allstate Ins. Co.,* 477 F.2d 553, 554 (5th Cir. 1973).

In *Riesterer,* the insured, a fire fighter, suffered a fatal heart attack while fighting a fire. The court, recognizing the "presumption that heart attacks are a natural rather than an accidental cause of death," affirmed the directed verdict in favor of the insurance company. 653 F.2d at 269. The court concluded that "there [was] no evidence that the insured at the time of the heart attack was performing work that was at all abnormal or unusual." *Id.* at 269.

Other courts have reached similar conclusions. *See Skowronek v. United Benefits Life Ins. Co.,* 567 F.Supp. 63 (E.D.Mich. 1983) *aff'd,* 754 F.2d 167 (6th Cir.1985) (holding that accidental benefits are due "only when something unusual or abnormal or unexpected happens in connection with an on-the-job heart attack"); *Coffer v. American Income Life Ins. Co.,* 168 Mich. App. 144, 423 N.W.2d 587, 590 (1988); *Valente v. Equitable Life Assur. Soc.,* 120 A.D.2d 934, 502 N.Y.S.2d 876 (4th Dept.) *appeal denied,* 68 N.Y.2d 608, 506 N.Y.S.2d 1033, 498 N.E.2d 435 (1986) (death resulting from a heart attack caused by ordinary physical exertion was not "acci-

dental" even though heart attack was unforeseen and unexpected).

The federal courts that have addressed the issue of whether a heart attack may be considered an accidental death under an insurance plan governed by ERISA have reached similar conclusions. *Questech, Inc. v. Hartford Accident and Indemnity Co.,* 713 F.Supp. 956 (E.D.Va.1989), the insured suffered a heart attack while driving. The court concluded that if the insured suffered the fatal heart attack before the car collision, then his death would not have been caused by some outside event or trauma. Therefore, it would be considered a death by natural as opposed to accidental causes.

Similarly, in *Barish v. United Mine Workers of America Health and Retirement Fund,* 753 F.Supp. 165 (W.D.Pa. 1990), the district court affirmed the denial of an employee's claim for disability benefits under an ERISA accidental benefits plan. The court found that the insured, who suffered a fatal heart attack while operating his bulldozer, was not entitled to benefits because he was only engaged in ordinary work-related activities prior to the fatal heart attack. The court upheld the denial of benefits because there was no evidence of any outside occurrence, trauma or sudden event that could have caused the heart attack. *Compare Arthurs v. Metropolitan Life Ins. Co.,* 760 F.Supp. 1095, 1097 (S.D.N.Y.1991) (insured's summary judgment motion denied on ERISA plan claim because the plaintiff presented evidence to show that the insured's fatal heart attack was brought on by extreme work conditions in a vault which was heated in excess of 110 degrees).

Mrs. Haley argues that her husband's heart attack falls within the meaning of "accident" because the attack was a sudden unforeseeable event that caused her husband's death. The fact that Mr. Haley did not have a history of heart disease and the fact that his death was caused by the heart attack, however, are irrelevant to our determination of whether his death was caused by an accident within the meaning of the plan. *See Senkier,* 948 F.2d at 1053

264

("[t]hat the insured's death was sudden and unexpected would make no difference—many illnesses kill swiftly and without warning"). In order to recover insurance benefits, Mr. Haley's heart attack must have been caused by some separate event, trauma or occurrence.

The record, however, contains no evidence that Mr. Haley may have been subjected to any trauma, event or occurrence that would have precipitated the heart attack. On the morning of his death, he arose as usual and left for work. When he returned home, he simply stated that he did not feel well. Mrs. Haley presented no evidence that her husband was in a car accident or subjected to some outside event or trauma the morning of his death that could have precipitated the attack. Moreover, both the emergency room doctor and the coroner testified that there were no signs that the death was caused by anything other than natural causes.

The law in this circuit is clear. Plaintiff bears the burden of proving that the insured's death resulted from an event which falls within the ordinary understanding of the term "accident." We conclude that a fatal heart attack, absent a triggering event, is not an accident within the ordinary, common meaning of the word. Therefore, we conclude that Mr. Haley did not die of an "injury caused by an accident" within the meaning of the policy.

Alternatively, Mrs. Haley asserts that Mr. Haley's attack was precipitated by the "unusually cold weather in Chicago" on the morning of his death.[2] Mrs. Haley contends that the weather is a "sufficient triggering event" which caused Mr. Haley's death. Although it was a cold morning, it is not unexpected or unforeseeable for it to be that cold in Chicago on a December morning. Further, the record contains no evidence that Mr. Haley was exposed to the weather, and if he was exposed, there is no evidence indicating the duration of the exposure. Further, there is no indication that he was improperly dressed during that

time. Therefore, we conclude that this argument is without merit.

### CONCLUSION

For the reasons stated above, Mrs. Haley is not entitled to accidental insurance benefits for the death of her husband. Mr. Haley's death, which was caused by a fatal heart attack, does not constitute "bodily injury caused by an accident" within the meaning of the policy's coverage. Therefore, we deny Mrs. Haley's motion for summary judgment and grant AI Life's cross-motion for summary judgment.

2. The local climatological data summary for Chicago states that on December 12, 1989, the temperature in Chicago was between five and seventeen degrees fahrenheit above zero.